DUNBAR et al. v. TEXAS IRR. CO.
(No. 6005.)

(Court of Civil Appeals of Texas. Galveston. June 25, 1912. Rehearing Denied May 3, 1917.)

1. WATERS AND WATER COURSES ⬦⟿258— IRRIGATION—LIEN FOR WATER.

Sayles' Ann. Civ. St. 1897, art. 3130, providing that every person, corporation, or association of persons which has heretofore constructed, or which may hereafter construct, any ditch, canal, dam, lake, or reservoir for the purpose of irrigation, and who shall lease or rent the water from said ditch, canal, dam, lake, or reservoir to any person or association of persons or corporation owning any lands subject to irrigation from any such ditch, canal, lake, dam, or reservoir, such person, corporation, or association of persons owning such ditch, canal, lake, dam, or reservoir shall have a preference lien superior to every other lien, upon the crop or crops raised upon the land thus irrigated under such lease or contract, gives a preferred lien to an irrigation company furnishing water to one entitled to compel it to furnish water upon the crops raised under such irrigation and against all persons asserting a lien of any kind against the crop.

2. LANDLORD AND TENANT ⬦⟿248(1)—IRRIGATION—LIEN FOR WATER.

Such lien is superior to the landlord's lien given by Rev. St. 1879, art. 3107.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1003, 1005–1008, 1017.]

3. MANDAMUS ⬦⟿133—IRRIGATION—DUTY TO FURNISH WATER.

Since Sayles' Ann. Civ. St. 1897, art. 3125, provides that all persons holding a possessory right to land adjoining an irrigation plant can compel the furnishing of water to irrigate crops, the duty to furnish water is statutory and can be enforced by mandamus.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 268.]

4. WATERS AND WATER COURSES ⬦⟿258—IRRIGATION—LIEN FOR WATER—"OWNER."

Under Sayles' Ann. Civ. St. 1897, art. 3130, the lien exists in favor of the irrigation company, though it furnishes the water under contract with the tenant, since the word "owner," though it primarily means the owner of the fee, includes also a person having a possessory right to the land.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Owner.]

5. CONSTITUTIONAL LAW ⬦⟿106—LANDLORD AND TENANT ⬦⟿241—LIEN FOR RENT.

Since the landlord's lien is given by statute, the Legislature may restrict it as it deems best for the public interest or entirely abolish it, and no vested right of the landlord is invaded by a statute authorizing a tenant to create a lien upon a crop superior to any lien in favor of the landlord.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 186, 212, 238–245, 252–257, 259; Landlord and Tenant, Cent. Dig. §§ 977, 978.]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Suit by the Texas Irrigation Company against J. Harvey and the Bay City Rice Milling Company, wherein D. N. Dunbar intervened. Judgment for plaintiff against defendant and intervener and for intervener over against defendant Harvey, and intervener and defendant Milling Company appeal. Affirmed.

Linn, Conger & Austin, of Bay City, for appellants. Gaines & Corbett, of Bay City, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against J. Harvey and the Bay City Rice Milling Company to recover the sum of $566.72, together with interest and attorney's fees, alleged to be due as water rents for water furnished the defendant Harvey by plaintiff to irrigate a rice crop grown by him during the season of 1909 upon a tract of 80.96 acres of land on the D. N. Dunbar farm in Matagorda county. It was alleged that plaintiff had a first lien upon the rice crop grown upon said land to secure the payment of said water rents, and that 231 sacks of said rice had been wrongfully converted by the defendant Bay City Rice Milling Company, and judgment was asked against said defendant for the value of said rice. The defendants answered and set up that D. N. Dunbar was the owner of the land on which the crop was raised; that Harvey was a tenant of said D. N. Dunbar and rented the land from him under a verbal rent contract for the year 1909, for a share of the crop, viz. three-tenths thereof, payable as harvested; and further that the said D. N. Dunbar, the landlord of said Harvey, had during the said year made advances to the said tenant to enable him to plant, grow, and harvest the crop raised, amounting to $587; that the tenant turned over to his said landlord, Dunbar, 231 sacks of rice, of the value of $1.70 per sack, in part payment of the sum due for advances; and that the defendant Bay City Rice Milling Company received the said rice from said Dunbar, stored it in his name, and for his account, and sold it for him on his order, and thereafter paid him the proceeds or such sale, less storage and commission for sale. D. N. Dunbar, the landlord, intervened and alleged that he was the owner of the land in fee simple; that J. Harvey was his tenant for the year 1909, under a parol cropping contract, by which the intervener, as consideration for the land and seed, was to receive three-tenths of the crops; and, further, that as landlord during said year and beginning on January 10, 1909, up to September 30, 1909, he had furnished advances to his said tenant, to enable him to plant, grow and harvest his crop, consisting of money, teams, tools, feed, and supplies, amounting to the sum of $587.80; that the tenant only made a crop of 330 sacks; that out of same as harvested he paid intervener 99 sacks for his rent, or share of the crop; that the re-

---

⬦⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

maining 231 sacks, of the value of $1.70 per sack, were delivered to him at the railroad station by the tenant as part payment for the advances so made; that he had and held the landlord's lien upon said crop; and that such lien was superior and paramount to any lien held by the plaintiff. The cause was tried by the court below without a jury, and judgment was rendered in favor of plaintiff against the defendant Harvey for the sum of $663, being the amount of the water rents due by him to plaintiff with interest and attorney's fees as provided in the rental contract, and against the defendant the Bay City Rice·Milling Company and the intervener D. N. Dunbar for the sum of $392.70, the value of said 231 sacks of rice with interest thereon from November 15, 1909. Judgment was also rendered in favor of the intervener against the defendant Harvey for the value of the supplies furnished him by the intervener. From this judgment, the defendant Bay City Rice Milling Company and the intervener D. N. Dunbar prosecutes this appeal.

The case was tried in the court below upon an agreed statement of facts, from which we make the following excerpts:

"By section 2 of the statement of facts it is agreed that D. N. Dunbar was, and ever since has been, the owner of the land in fee simple.

"By section 3 it is agreed that Dunbar about January 1, 1909, rented the 80 acres of land to defendant Harvey for the year 1909, by verbal contract under which intervener, Dunbar, for the furnishing of land and seed to plant it, was to have three-tenths of the crop raised; that the tenant Harvey raised a crop of 330 sacks and delivered 99 sacks to Dunbar for the rent as same was harvested.

"By section 4 it is agreed that the landlord, Dunbar, during said year, beginning on January 10, 1909, and ending on September 30, 1909, made and furnished advances to his said tenant, amounting to $587.80, to enable him to plant, cultivate, and harvest the crop, which advances consisted of stock, feed, cash, harness, tools, and supplies, and by the account of advances itemized in said article it is shown that the landlord, Dunbar, had advanced to his tenant $267 prior to the making of the water contract.

"By section 5 it is agreed that the tenant hauled the balance of the crop, amounting to 231 sacks, to the railroad station on September 30, 1909, and on October 15, 1909, turned same over to his landlord, Dunbar, in part payment of the amount due for advances and assigned to him the bill of lading.

"By section 6 it is agreed that afterwards the landlord, Dunbar, delivered the said 231 sacks of rice by rail to the defendant Bay City Rice Milling Company, who sold it for his account at the price of $1.70 per sack.

"By section 7 it is agreed that the landlord, Dunbar, applied the proceeds of the sale to the partial payment of his debt for advances.

"By section 12 it is agreed that no contract of any nature existed between the landlord, Dunbar, and the plaintiff (appellee) for the irrigation of the land cultivated by the defendant Harvey, and that said Dunbar was in no manner a party to the contract between the tenant Harvey and the plaintiff sued on herein, and that the landlord's lien provided for by statute has never been waived or released.

"By sections 9, 10, and 11 it is agreed that the defendant J. Harvey, on April 20, 1909, entered into a water contract with plaintiff company, wherein he agreed to pay a water rental of $7 per acre for the irrigation of the land, amounting to $566.70, and that subdivision 9 of said contract created a mortage on all rice grown on the land to secure the payment of the sums due, and for attorney's fees, in case suit was brought on the contract; that said mortgage has been duly filed on May 4, 1909, as a chattel mortgage; and that neither the statutory nor the chattel mortgage lien of the plaintiff has ever been waived or released."

Under an appropriate assignment of error, appellant first assails the judgment of the court below upon the ground that article 3130 of the statute (Sayles' Civil Statutes) is so vague and indefinite that no valid lien is created thereby. The proposition presented under this assignment is as follows:

"A statutory lien on personal property, to be valid and effective as such, must be complete and specific in its terms, as to the amount secured, as against whom the lien exists, and as to the particular service or product for the value of which the lien is given, failing in these matters the act is void for uncertainty and indefiniteness."

Article 3130 of the statute is in the following language:

"Every person, corporation or association of persons which has heretofore constructed or which may hereafter construct any ditch, canal, dam, lake or reservoir for the purpose of irrigation, and who shall lease or rent the water from said ditch, canal, dam, lake or reservoir to any person or association of persons or corporation owning any lands subject to irrigation from any such ditch, canal, lake,· dam or reservoir, such person, corporation or association of persons owning such ditch, canal, lake, dam or reservoir shall have a preference lien superior to every other lien, upon the crop or crops raised upon the land thus irrigated under such lease or contract."

[1] While the intention of the Legislature might have been expressed in clearer and more accurate language, we think, when the irrigation act as a whole is considered and the general purpose and intent of the Legislature in the passage of the act is borne in mind, the meaning of the article above quoted is plain. The amount secured by the lien is clearly the amount due for the rent of the water with which the crop was irrigated. The lien is given to the corporation or person who constructs or owns an irrigation ditch, canal, dam, lake, or reservoir, and who leases or rents water to irrigate a crop upon land subject to irrigation from said ditch, canal, lake, dam, or reservoir, and is given upon the crop so irrigated, and no other conclusion can be drawn from the language of the article than that the Legislature intended to give the lien to secure the irrigation company in the amount contracted to be paid for irrigating the land on which the crop is grown. There can be no doubt as against whom the lien exists. It certainly exists against the owner of the crop with whom the contract for water is made, and by the express terms of the article it is a "preference lien superior to any other lien," and, if the contract to furnish the water is made with one having a right under the statute to

compel the irrigation company to furnish the water, the lien given by the statute to secure the company compensation for the water furnished to such person exists against all persons asserting a lien of any kind against the crop irrigated by the water so furnished.

[2] Under the second assignment of error, it is contended that the landlord's lien given by article 3107 of the statute (Rev. St. 1879) is superior to the lien given by the article above quoted. We cannot so construe the statute. Under the common law, a landlord had a lien to secure his rents, and in the early legislation of this state such lien was expressly given by statute and was given to secure advances made and supplies furnished by the landlord as well as the rents. This lien as given by the statute was made a preference lien. But the power of the Legislature to subordinate the landlord's lien to other liens cannot be doubted, and it seems to us words could not more clearly express the intention of the Legislature to make the landlord's lien subordinate to the lien given by the irrigation statute than the declaration that the irrigation company's lien is a preference lien superior to every other lien upon the crop or crops raised upon the land thus irrigated under such lease or contract. If the Legislature had not intended to make the irrigation lien superior to the landlord's lien, they would have added to the above-quoted portion of the article the clause, "except the landlord's lien given by article 3107 of the Revised Statutes." There being no such words of limitation, we must believe that the Legislature meant what they said, and that the irrigation lien is superior to any other lien, including the landlord's lien.

[3] There is a sound reason for making the irrigation lien superior to the landlord's lien. No man is compelled by law to rent his land. If the person desiring to rent is irresponsible or undesirable, or can give no security for the rent of the land, the owner can refuse to rent to him; but such is not the case with the person or corporation owning an irrigation plant. The statute provides (article 3125) that all persons who own or hold a possessory right to land adjoining an irrigation plant shall be entitled to be supplied with water from such plant, and, if such person fails to agree upon a price for the water necessary to irrigate his land, the irrigation company shall nevertheless, if it has any water not contracted to others, furnish the necessary water to such person at such price as may be reasonable and just. This obligation upon the irrigation company to so furnish water is a statutory duty imposed upon it, in favor of that portion of the public holding lands contiguous to its plant, which can be enforced by mandamus. Having imposed this duty upon the irrigation company, it was reasonable and just that such company should be given a preference lien superior

even to that of the landlord to secure its reasonable compensation for the water it is thus obliged to furnish.

[4] Under the third assignment of error, it is contended that the preference lien given by this statute is only given when the water contract is made with the owner of the land, and that a tenant is not the owner of the land, and therefore no lien is created when the contract to supply water is made only with the tenant.

The primary meaning of the word "owner," as applied to land, is one who owns the fee and who has the right to dispose of the property, but the term also includes a person having a possessory right to the land, or the person lawfully occupying and cultivating it, and this is the sense in which it is used in the article before quoted. 29 Cyc. 1549; Turner v. Cross, 83 Tex. 227, 18 S. W. 578, 15 L. R. A. 262. As we have seen, this statute expressly gives the tenant the right to compel the irrigation company to furnish him water, and the Legislature certainly intended that the lien given the company should protect it in all contracts which the statute obligated it to make, and this evident purpose and intent of the act would be disregarded if the term "owner of the land," as used in article 3130, is given its narrow or restricted meaning. That the word "owner" as here used does not mean the legal owner of the fee-simple title to the land is also apparent from the fact that the lien is not given upon the land, but upon the crop, and the "owner of the land," as the term is here used, means such owner as has the ownership of the crop to be irrigated, the title to which is in the tenant and not in the landlord.

[5] There is no constitutional provision protecting landlords in the lien given by the statute, and, as we have before said, it is in the power of the Legislature to restrict this lien in such manner as it deems best for the public interest, or to entirely abolish such common-law or statutory lien, and no vested right of the landowner is invaded by a statute which authorizes a tenant to create a lien upon a crop grown by him upon rented premises superior to any lien in favor of the landlord.

The constitutionality of the irrigation statute was upheld by this court and the Supreme Court in the case of Borden v. Trespalacios Irrigation Co., 82 S. W. 461, and Id., 98 Tex. 494, 86 S. W. 11, 107 Am. St. Rep. 640, and none of the constitutional objections urged by appellant to the act can be sustained.

We think none of appellant's assignments presents any error, and that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.