TEXAS BANK & TRUST CO. OF BEAU-
MONT v. SMITH et al.

BEAUMONT IRRIGATING CO. v. McDON-
ALD et al.

(No. 5949.)

(Court of Civil Appeals of Texas. Galveston.
June 26, 1912. Rehearing Denied April
5, 1917.)

1. WATERS AND WATER COURSES ⬡⇒258—IR-
RIGATION—LIEN FOR WATER—"OWNER."

Under Sayles' Ann. Civ. St. 1897, art. 3130,
providing that every person, corporation, or as-
sociation of persons which has heretofore con-
structed or which may hereafter construct any
ditch, canal, dam, lake, or reservoir for the
purpose of irrigation, and who shall lease or
rent the water from said ditch, canal, dam, lake,
or reservoir to any person or association of
persons owning any lands subject to irrigation
from any such ditch, canal, lake, dam, or reservoir,
such person, corporation, or association of persons owning such ditch, canal,
lake, dam, or reservoir shall have a preference
lien superior to every other lien, upon the
crop or crops raised upon the land thus
irrigated under such lease or contract, exists in
favor of the irrigation company, though it fur-
nishes the water under contract with the tenant,
since the word "owner," though it primarily
means the owner of the fee, includes also a
person having a possessory right to the land.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Owner.]

2. LANDLORD AND TENANT ⬡⇒248(1)—IRRIGA-
TION—LIEN FOR WATER.

Such lien is superior to the landlord's lien
given by Rev. St. 1879, art. 3107.

[Ed. Note.—For other cases, see Landlord
and Tenant, Cent. Dig. §§ 1003, 1005–1008,
1017.]

3. CHATTEL MORTGAGES ⬡⇒138(1)—IRRIGA-
TION—LIEN FOR WATER.

Such lien is superior to the lien of a bank
under a mortgage given to secure a loan of
money for the purpose of purchasing seed with
which to plant the land.

[Ed. Note.—For other cases, see Chattel Mort-
gages, Cent. Dig. §§ 228, 229, 231–236.]

Appeal and Error from District Court, Jef-
ferson County; L. B. Hightower, Jr., Judge.

Suit by the Texas Bank & Trust Company
of Beaumont against George W. Smith and
others, and by the Beaumont Irrigating Com-
pany against Sadie C. McDonald, George W.
Smith, and others. The cases were consoli-
dated, and R. W. Flournoy and others in-
tervened. From the decree rendered, the
Bank appeals and the Irrigation Company
brings error. Affirmed in part, and reversed
and rendered in part.

See, also, 192 S. W. 533.

Carlton, Townes & Townes, of Houston,
and R. E. Hardwicke, of Beaumont, for
Texas Bank & Trust Co. Lipscomb & Wil-
liams, of Beaumont, for Beaumont Irr. Co.
Geo. D. Anderson, of Beaumont, for Sadie C.
McDonald and others.

McMEANS, J. During the year 1909, George
W. Smith had possession under leases of cer-
tain parts of sections No. 16 and 13, H. T.
& B. R. R. surveys in Jefferson county, which
for the year 1909 he and R. A. Davidson were
cultivating in rice with the agreement that
Smith should furnish the land, seed, and
water, and that Davidson should do what-
ever else was necessary to make the crop,
and they should divide it equally. Smith's
farm consisted of the following parcels of
land on section 16, which were leased to him
by the respective owners and for which he
agreed to pay money rent, viz.: 80 acres be-
longing to Sadie C. McDonald; 120 acres
owned by R. W. Flournoy; 80 acres owned
by H. Heard and Thomas Ross.; 120 acres
belonging to J. F. Cooper; and 80 acres
owned by H. Harding; also, 80.8 acres owned
by E. L. Bacon on section 13—making in all
560.8 acres. He had in cultivation in rice
on this farm 423 acres on section 16 and 80.8
acres on section 13. On May 26, 1909, the
Texas Bank & Trust Company lent Smith
certain money to enable him to comply with
his part of the contract with Davidson to
furnish seed rice, etc., and agreed to make
other advances thereafter, and on the date
mentioned the bank took from Smith a mort-
gage on his one-half of the crop that should
be grown on section 16, which mortgage was
duly filed for registration May 29, 1909. On
July 19, 1909, Smith signed a contract with
the Beaumont Irrigating Company, whereby
the latter agreed to furnish water to the
former at a stipulated price per acre to irri-
gate the lands cultivated by himself and
Davidson. There is testimony in the record
that justifies the finding that this contract
was really made between Smith and the irri-
gating company on May 12, 1909, but not re-
duced to writing and signed by Smith until
July 19th; but in the view we take it is
immaterial whether this contract was made
before or after the execution of the mort-
gage to the bank. The landowners knew at
the time they leased to Smith that he intend-
ed planting and cultivating the land in rice,
and the bank knew this at the time it took
the mortgage from Smith. Rice cannot be
successfully grown without water, and on the
land in question could not be grown with-
out irrigation, and the only water accessible
to the Smith farm was that in the canals of
the irrigating company.

On October 28, 1909, default having been
made in the payment of rent, Sadie C. Mc-
Donald filed suit in the district court of Jef-
ferson county, Fifty-Eighth judicial district,
against Smith, to recover judgment for the
rent due her and prayed for foreclosure of
her landlord's lien upon the rice crop grown
on her land, and at her instance a receiver
was appointed to take charge of the rice on
hand. Afterwards, the Beaumont Irrigating
Company filed suit in the district court of
Jefferson county, Sixtieth judicial district,
praying judgment for the amount due, under

its water contract with Smith, and asking a foreclosure of its lien upon the entire crop. This case and the case then pending in the Fifty-Eighth district court were consolidated, the same receiver having been appointed in both, and the receiver's powers were enlarged so as to authorize him to take charge of the entire crop, so far as the same could be located, which he did. The other landlords and claimants against the rice, including the Texas Bank & Trust Company, intervened in one or the other of the respective suits, or in the consolidated suit. No question is made of the amount found by the court to be due the various landowners by Smith for rent, nor the amount of Smith's debt to the bank, which was secured by the mortgage, nor as to the amount due the irrigating company for water rates, and the judgment establishing Smith's liability to each of such creditors is not complained of. Upon trial by the court, a jury having been waived, judgment was rendered against Smith establishing the debt of each claimant as alleged, and declaring a first lien extending to the entire crop existed in favor of the various landowners and their assignees, a second lien likewise extending to the entire crop in favor of the Beaumont Irrigating Company, and a third lien extending to Smith's half of the crop only, in favor of the Texas Bank & Trust Company. To this judgment both the bank and the irrigating company excepted, and bring this case before us for revision and correction; the former by appeal, and the latter by writ of error.

The principal, and we may say the only important, question presented for our determination by the Beaumont Irrigating Company, is whether the lien of the landlords for rent is superior to its lien for water rates, and the important questions presented by the Texas Bank & Trust Company are: (1) Whether the irrigating company had any lien upon the crop at all; and (2) if so, Was its lien for water rates superior to the mortgage lien of the bank?

We will first dispose of the contention of the bank that no lien existed under the facts of this case in favor of the irrigating company. This contention is based upon the language of article 3130, Sayles' Civil Statutes, which reads as follows:

"Every person, corporation or association of persons which has heretofore constructed or which may hereafter construct any ditch, canal, dam, lake or reservoir for the purpose of irrigation, and who shall lease or rent the water from said ditch, canal, dam, lake or reservoir to any person or association of persons or corporation owning any lands subject to irrigation from any such ditch, canal, lake, dam or reservoir, such person, corporation or association of persons owning such ditch, canal, lake, dam or reservoir shall have a preference lien, superior to every other lien, upon the crop or crops raised upon the land thus irrigated under such lease or contract."

[1] The evidence shows without contradiction that Smith was the lessee and not the owner of the land irrigated by the irrigating company, and the bank argues that the statutory lien in favor of the company did not exist unless the contract for irrigation is made by, or the water for irrigation is furnished to, the landowner.

This question recently arose in this court in the case of Dunbar v. Texas Irrigation Co., 195 S. W. 614, and was decided adversely to the bank's contention. Upon this point we copy the following from the opinion in that case:

"Under the third assignment of error, it is contended that the preference lien given by this statute is only given when the water contract is made with the owner of the land, and that a tenant is not the owner of the land, and therefore no lien is created when the contract to supply water is made only with the tenant.

"The primary meaning of the word 'owner' as applied to land is one who owns the fee and who has the right to dispose of the property; but the term also includes a person having a possessory right to the land, or the person lawfully occupying and cultivating it, and this is the sense in which it is used in the article before quoted. 29 Cyc. 1549; Turner v. Cross, 83 Tex. 227, 18 S. W. 578, 15 L. R. A. 262.

"As we have seen, this statute expressly gives the tenant the right to compel the irrigation company to furnish him water, and the Legislature certainly intended that the lien given the company should protect it in all contracts which the statute obligated it to make, and this evident purpose and intent of the act would be disregarded if the term 'owner of the land,' as used in article 3130, is given its narrow or restricted meaning.

"That the word owner, as here used, does not mean the legal owner of the fee-simple title to the land, is also apparent from the fact that the lien is not given upon the land, but upon the crop, and the 'owner of the land,' as the term is here used, means such owner as has the ownership of the crop to be irrigated, the title to which is in the tenant and not in the landlord."

[2] We come now to the question of priority of liens as between the irrigating company and the landlords. This question was also presented to and passed upon by this court in the case referred to, and, in accordance with the decision in that case, we uphold the contention of the irrigating company that its lien for water rates is superior to that of the landlords for rent of the land. We copy from the opinion:

"Under the second assignment of error, it is contended that the landlord's lien given by article 3107 of the statute [Rev. St. 1879] is superior to the lien given by the article above quoted. We cannot so construe the statute. Under the common law, a landlord had a lien to secure his rents, and in the early legislation of this state such lien was expressly given by statute and was given to secure advances made and supplies furnished by the landlord as well as the rents. This lien as given by the statute was made a preference lien. But the power of the Legislature to subordinate the landlord's lien to other liens cannot be doubted, and it seems to us words could not more clearly express the intention of the Legislature to make the landlord's lien subordinate to the lien given by the irrigation statute than the declaration that the irrigation company lien is a 'preference lien superior to every other lien upon the crop or crops raised upon the land thus irrigated under such lease or contract.' If the Legislature had not intended to make the irrigation lien su-

perior to the landlord's lien, they would have added to the above-quoted portion of the article the clause, 'except the landlord's lien given by article 3107 of the Revised Statutes.' There being no such words of limitation, we must believe that the Legislature meant what they said, and that the irrigation lien is superior to any other lien, including the landlord's lien.

"There is a sound reason for making the irrigation lien superior to the landlord's lien. No man is compelled by law to rent his land. If the person desiring to rent is irresponsible or undesirable or can give no security for the rent of the land, the owner can refuse to rent to him; but such is not the case with the person or corporation owning an irrigation plant. The statute provides (article 3125) that all persons who own or hold a possessory right to land adjoining an irrigation plant shall be entitled to be supplied with water from such plant, and, if such person fails to agree upon a price for the water necessary to irrigate his land, the irrigation company shall nevertheless, if it has any water not contracted to others, furnish the necessary water to such person at such price as may be reasonable and just. This obligation upon the irrigation company to so furnish water is a statutory duty imposed upon it, in favor of that portion of the public holding lands contiguous to its plant, which can be enforced by mandamus. Having imposed this duty upon the irrigation company, it was reasonable and just that such company should be given a preference lien superior even to that of the landlords to secure its reasonable compensation for the water it is thus obliged to furnish."

[3] It follows from what we have said that the lien of the irrigating company is superior to the mortgage lien of the bank. We think that the judgment of the court below postponing the mortgage lien of the bank to the liens of the irrigating company and the landlords should be affirmed, and that the judgment postponing the lien of the irrigating company to the liens of the landlords should be reversed, and judgment is here rendered establishing the lien of the irrigating company as a first lien on the rice and superior to all other liens, and it has been so ordered. In all other respects, the judgment of the court below is undisturbed.

Affirmed in part. Reversed and rendered in part.