## FRASER *v.* HAWKINS.

Opinion delivered January 13, 1919.

1. ANIMALS—"RUNNING AT LARGE."—Where a stallion broke out of his enclosure without his owner's knowledge, but was permitted by the owner to remain in another's pature with such other's mares after knowledge that he was there, and without such other's consent, such animal was "running at large," within the meaning of Kirby's Dig., § 7897.

2. ANIMALS—RUNNING AT LARGE—LIABILITY OF "OWNER."—The word "owner," as used in Kirby's Dig., § 7897, prescribing the liability, by fine recoverable by civil action, of the owner of any stallion running at large, does not mean the one having the absolute title, but the one having the right to possession and control of the animal.

Appeal from Poinsett Circuit Court; *R. H. Dudley,* Judge; reversed.

### STATEMENT OF FACTS.

W. R. Hawkins instituted this suit against Clinton Fraser for the recovery of damages sustained by him in consequence of the killing of two of his mares and a colt alleged to have been done by the defendant's stallion. The material facts are as follows:

Clinton Fraser resided at Jonesboro, Arkansas, during the latter part of 1917, and the first part of 1918. He owned a farm about three and a half miles from Lepanto and rented it out to W. I. Boshears. He also owned a stallion, between two and three years old and weighing between seven and eight hundred pounds, in the spring of 1917. In June, 1917, Fraser let Boshears keep the stallion for the use of him. In the latter part of November, 1917, Boshears let the stallion get out and he went to the place occupied by W. R. Hawkins and stayed in the pasture there with his mares until the 28th or 29th of December, 1917. During this time Hawkins fed the stallion and he ran in the pasture with thirteen Texas mares belonging to him. The stallion was then taken back by Boshears and on the 4th or 5th of January, 1918, he again broke out from the inclosure in which he was kept by Boshears and went to the pasture in which Hawkins kept

his mares and broke into it. Boshears made inquiries in the neighborhood about the stallion and in two or three days learned that he was running with Hawkins' mares. Boshears let the stallion stay in the pasture for several days longer without sending for him. This was done without Hawkins' consent. During this time the stallion killed two of Hawkins' mares and a colt. When Boshears sent for the stallion Hawkins at first refused to turn him over to him unless Boshears would pay him for the damages done to him by the stallion killing his mares. A few days later, however, he turned the stallion over to Boshears. Other facts will be stated or referred to in the opinion.

The jury returned a verdict for the plaintiff in the sum of $100, and the defendant has appealed.

*Sloan & Sloan,* for appellant.

1. The uncontradicted proof shows that Boshears was not the agent of Fraser, but a bailee for hire. The transaction between them constituted a bailment for their mutual benefit. 32 Iowa 161. A bailor is not liable for damages arising from the negligent or improper use by the bailee of the property bailed. 6 C. J. 1151, sec. 114; 3 R. C. L., p. 145, sec. 69; 26 Pa. St. 482.

2. Appellant was not guilty of any negligence either in person or by agent, therefore not liable under sec. 7897, Kirby's Digest; 61 Ark. 196.

3. The word "owner" does not necessarily mean the holder of the legal title, but includes one who has the exclusive possession and control of the property. 128 Ark.

4. Defendant's instruction No. 5 should have been given.

5. No negligence on the part of Boshears was shown.

HART, J., (after stating the facts). The liability of the defendant depends upon the construction to be given to section 7897 of Kirby's Digest. It reads as follows:

"If any seed horse or any unaltered mule or jack, over the age of two years, be found running at large, the

owner shall be fined for the first offense three dollars, and for every subsequent offense not exceeding ten dollars, to be recovered by civil action in the name of any person who shall sue therefor, one-half to his own use and the other to the use of the county; and the owner shall also be liable for all damages that may be sustained by the running at large of any seed horse, jack or mule.''

In *Briscoe* v. *Alfrey,* 61 Ark. 196, the court said that this statute does not place owners of animals beyond the protection of that universal rule which exempts men from liability for inevitable accidents and that it was the intentional or negligent permission of the owner for his animal to run at large which subjects him to the civil and penal consequences prescribed by the statute.

In that case the defendant kept the animal in a strong stable surrounded by a strong high fence and it broke out during the night without the defendant's knowledge. The court held there was no liability for the reason just given. Tested by this rule the animal was ''running at large'' in the present case. It is true the stallion broke out without the owner's knowledge, but the owner permitted him to remain in the pasture of the plaintiff for several days after he knew he was there and without the plaintiff's consent. It was during this time that the stallion killed the mares of the plaintiff. The stallion was not confined and broke into the field of the plaintiff and stayed there without his permission. The stallion was without restraint or confinement by the owner and this constituted ''running at large'' within the meaning of the statute. 2 Cyc. 443; *Goener* v. *Woll* (Minn.), 2 N. W. 163; *Duggan* v. *Hansen* (Neb.), 61 N. W. 622; *Russell* v. *Cone,* 46 Va. 600; *Wright* v. *Clark* (Vt.), 28 Am. Repts. 496, and see case note to 9 Ann. Cas. at p. 284.

The undisputed evidence shows that the animal was in charge of Boshears. It is true he belonged to Fraser and was kept on Fraser's premises but Boshears rented the land from Fraser for the stipulated price of $5 per acre and hired the horse from Fraser for the use of him. Under this state of facts Boshears had the right to the

exclusive use, possession and control of the horse at the time the horse killed the mares. As we have already seen the statute does not impose absolute liability upon the owner but only subjects him to civil liability when his animal runs at large by his negligent permission. Thus it will be seen that the statute is directed against the person who has the right of immediate possession and control of the animal. So we are of the opinion that the word "owner" as used in the statute does not mean the one having the absolute title, but means the one having the right to the possession and control of the animal. This being so Fraser was not the owner of the animal within the meaning of the statute and was not subject to liability under the facts as disclosed by the record. Hence under the undisputed facts as presented by the record, the court erred in not directing a verdict for the defendant.

It follows that the judgment must be reversed and the cause will be remanded for a new trial.