[S. F. No. 10499.  In Bank.—April 8, 1924.]

# RAY L. RILEY, etc., Respondent, v. H. R. HAVENS, Appellant.

[S. F. No. 10500.  In Bank.—April 8, 1924.]

# RAY L. RILEY, etc., Respondent, v. MARY J. ROBINSON, Appellant.

[S. F. No. 10501.  In Bank.—April 8, 1924.]

# RAY L. RILEY, etc., Respondent, v. ETHEL M. MATHER, Appellant.

[1] INHERITANCE TAX—TAXABILITY OF TRANSFERS—LAW GOVERNING.—
The taxability of transfers of property alleged to be subject to
inheritance tax must be determined by the law in effect at the
time the transfer is made, and no subsequent act of the legisla-
ture can thereafter add to or diminish the tax or otherwise dis-
turb it.

[2] STATUTE OF LIMITATIONS—REMEDIES—RIGHTS.—Statutes of limita-
tion are designed to affect remedies and not rights.

[3] ID.—EXTENSION OF STATUTORY TIME BY LATER ACT—POWER OF
LEGISLATURE.—The legislature may, by a later act, extend the
limitation of time for bringing proceedings fixed by a prior act,
provided no bar of the statute of limitations had been raised be-
fore or at the time the later act becomes effective.

[4] INHERITANCE TAX—SECTION 4, ACT OF 1913—STATUTE OF LIMITA-
TIONS — APPLICABILITY TO PRIOR ACTS — INTENTION OF LEGISLA-
TURE.—In enacting section 4 of the Inheritance Tax Act of 1913
(Stats. and Amendments, 1913, c. 595, p. 1066), which in part pro-
vides that "The provisions of the Code of Civil Procedure relative
to the limitation of time of enforcing a civil remedy shall not
apply to any proceeding or action taken to levy, appraise, assess,
determine, or enforce the collection of any tax or penalty pre-
scribed by this article, and this section shall be construed as hav-
ing been in effect as of date of the original enactment of the
inheritance tax law," it was the apparent intention and attempt of
the legislature to give to the act a retroactive effect by removing
altogether the bar of the statute of limitations as a defense to
the collection of any tax or penalty imposed by prior inheritance
tax acts.

[5] ID. — ACT OF 1913 CONTINUATION OF PREVIOUS ACTS — CONSTRUC-
TION.—The Inheritance Tax Act of 1913 requiring taxation of

transfers is but a continuation of the inheritance tax law that had been in existence during every moment of time for many years prior to its revision in 1913.

[6] STATUTORY CONSTRUCTION—TAX LEGISLATION—INTENT.—All tax legislation must be construed most strongly against the state and most favorably to the taxpayer, but this does not mean that the language of a statute must be given an unnatural construction to defeat tax legislation or that the evident intention of the legislature in this particular may be disregarded.

APPEALS from judgments of the Superior Court of Alameda County. E. C. Robinson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fitzgerald, Abbott & Beardsley for Appellants.

H. C. Lucas, W. H. H. Gentry and Ralph W. Smith for Respondent.

SEAWELL, J.—These cases, presenting precisely the same questions of law, have been consolidated by the stipulations of the parties thereto, and are presented as one proceeding.

The actions were brought by the petitioner in his official capacity as state controller.

The appeals are taken by respondents and appellants, adult children of Elizabeth H. Havens, deceased, from judgments holding each respectively liable to the state for an inheritance transfer tax due upon certain shares of the capital stock of the M. K. Blake Estate Company, a corporation, the certificates of which were indorsed, transferred, and delivered February 9, 1911, by said Elizabeth H. Havens as gifts to her said children. The original certificates were canceled upon the books of said corporation October 11, 1912, and other certificates of corresponding values were thereupon issued to said children in lieu of those canceled. Elizabeth H. Havens, thereafter, to wit, December 23, 1912, died, a resident of Alameda County, this state. These proceedings were commenced upon the sixteenth day of December, 1921, approximately nine years after the death of said Elizabeth H. Havens. The state's right to recover the tax is resisted solely upon the ground of the bar of section 338, subdivision 1, Code of Civil Pro-

cedure, which provides that "an action upon a liability created by statute, other than a penalty or forfeiture" must be commenced "within three years." This objection is undoubtedly valid unless the bar of the statute has in some manner been tolled or unless it has no force as against the state for the enforcement of the payment of these transfer taxes by virtue of the provisions of the Inheritance Tax Act of 1913 (Stats. and Amendments, 1913, c. 595, p. 1066), which, in part, provides as follows:

"Sec. 4. Such taxes shall be and remain a lien upon the property passed or transferred until paid, and the person to whom the property passes or is transferred, and all administrators, executors and trustees of every estate so transferred or passed, shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed. The provisions of the Code of Civil Procedure relative to the limitation of time of enforcing a civil remedy shall not apply to any proceeding or action taken to levy, appraise, assess, determine, or enforce the collection of any tax or penalty prescribed by this article, and this section shall be construed as having been in effect as of date of the original enactment of the inheritance tax law; *provided,* that unless sued for within five years after they are due and legally demandable, such taxes, or any taxes accruing under an act herein repealed, shall cease to be a lien as against any *bona fide* purchaser of real property; *and provided,* that no such lien shall cease within five years from the date of the passage of this act. The tax so imposed shall be upon the market value of such property at the rates hereinafter prescribed and only upon the market value of such property at the rates hereinafter prescribed and only upon the excess over the exemptions hereinafter granted; *and provided,* that in determining said market value no deduction shall be made for any family allowance made out of said estate."

[1] It is the settled law of this state that the taxability of such transfers must be determined by the law in effect at the time the transfer is made, which in this case would be by the act of 1905, and no subsequent act of the legislature can thereafter add to or diminish the tax or otherwise disturb it. (*Estate of Potter,* 188 Cal. 55 [204 Pac. 826]; *Chambers* v. *Gibb,* 186 Cal. 196 [198 Pac. 1032]; *Nickel* v. *State,* 179 Cal. 126 [175 Pac. 641]; *Estate of Brix,*

181 Cal. 667 [186 Pac. 135] ; *Estate of Felton,* 176 Cal. 663 [169 Pac. 392] ; *Hunt* v. *Wicht,* 174 Cal. 205 [L. R. A. 1917C, 961, 162 Pac. 639].) **[2]** It must be conceded, of course, that statutes of limitation are designed to affect remedies and not rights. **[3]** Appellants admit that the legislature may, by a later act, extend the statutory period fixed by a prior act, provided no bar of the statute had been raised before or at the time the later act becomes effective.

**[4]** Appellants place their resistance to the asserted right of the petitioner to collect the taxes in suit upon the construction which they give to section 4 of the act of 1913. It is their contention that the words "prescribed by this article" (act, law, or statute) control the entire section and limit the application of the statute of limitations as extended by the act of 1913 solely to transfers made at and subsequent to the time it became effective and not to the act of 1905. We think the language of the act of 1913 discloses a distinct legislative intent quite contrary to the construction given to it by appellants. It was the apparent intention and attempt of the legislature to give to the act a retroactive effect by removing altogether the bar of the statute as a defense to the collection of any tax or penalty imposed by prior inheritance tax acts. Section 4 of the act of 1913 provides that the "act shall be construed as having been in effect as of the original enactment of the inheritance tax *law.*" This sentence is followed by a clause making provision for *any taxes* accruing "under an act herein *repealed.*" (Italics ours.) This is the equivalent of saying that the act shall be construed as having been in effect at the time of and continuously since the enactment of the statute of 1893, which was the first legislation had upon the subject. Section 4 of the act of 1913 cannot fairly be construed as applying alone to the tax impositions reincorporated in that act and to none other. Its language is sufficiently clear to disabuse the mind of any confusion in that respect. Transfer taxes were laid upon the same subjects which furnish the basis for the imposition of the same class of taxes under the act of 1905. The enlargement of the statute of limitation has in nowise changed the *rate* of taxation or the *subjects* upon which taxes were laid by the act of 1905 or by any prior act.

No vested right has been disturbed, as the tax has not become barred during the life of the act that authorized its assessment, but it was a subsisting claim at the time the act of 1913 became a law. The "tax or penalty prescribed by *this article*" is a tax that was also *prescribed* by the acts of 1911, 1905 and other prior acts. The subjects of taxation are unchanged. The act of 1913 superseded all prior acts. It was a revision of the general law on the subject as was each one of the acts which it superseded. It was the evident intention of the legislature to make section 4 of the act of 1913 a part of the general plan or system of inheritance taxation first adopted in 1893. The language of the act cannot be harmonized with any other reasonable theory. [5] The act of 1913 requiring the taxation of transfers is but a continuation of the law that had been in existence during every moment of time for many years prior to its revision in 1913.

We are not here considering the question of the enforcement of a personal obligation or the revival of an action to restore a remedy which had become lost, such as was considered in *Chambers* v. *Gallagher,* 177 Cal. 704 [171 Pac. 931], or with the particular question of construction presented in *Estate of Potter, supra,* which will be hereafter adverted to.

Section 26 of said act of 1913 contained the last expression of the legislature on the subject at the time the act was passed. After referring specifically to each reenactment or amendment of the law from the beginning said section concludes by reserving all prior rights given under repealed acts in the following words: "that such repeal shall in nowise affect any suit, prosecution or court proceeding pending at the time this act shall take effect, *or any right which the state of California may have at the time of the taking effect of this act,* to claim a tax upon any property under the provisions of the *act or acts hereby repealed, for which no proceeding has been commenced;* nor affect any appeal, right of appeal in any suit pending, or orders fixing tax, existing in this state at *the time of the taking effect of this act.*" (Italics ours.) Thus it will be seen that all rights which had accrued to the state theretofore were by said act expressly reserved.

A law prescribing inheritance and transfer taxes has existed in this state for a period of more than thirty years. This law has been indiscriminately referred to as the inheritance tax act, the inheritance tax statute, and the inheritance tax law. No one has been deceived by the reference made to it. The law has been regarded as a part of our permanent policy in matters of inheritance taxation. With the exception of the added remedial provision as to the statute of limitations section 4 of the act of 1913 is identical with section 1 of the acts of 1905 and 1911, respectively.

In *Estate of Martin,* 153 Cal. 225 [94 Pac. 1053], the effect of an express repeal of the Inheritance Tax Act of 1902 by the act of 1905 was considered by the court. It was there said that such re-enactments as the one now before us come within the scope and effect of section 325 of the Political Code, which declares that when a part of a statute is amended "it is not to be considered as having been repealed and re-enacted in the amended form; but the portions which are not altered are to be considered as having been the law from the time when they were enacted." Continuing, it was said: "The rule particularly applicable to this case is thus stated in Sutherland on Statutory Construction (2d ed., sec. 238): 'Where there is an express repeal of an existing statute, and a re-enactment of it at the same time, or a repeal and re-enactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes effect at the same time.'" The opinion gives approval to the following quotation from *Bear Lake Irr. Co.* v. *Garland,* 164 U. S. 11 [41 L. Ed. 327, 17 Sup. Ct. Rep. 9, see, also, Rose's U. S. Notes], to which we have added the preceding sentences: "Upon comparing the two acts of 1888 and 1890 together, it is seen that they both legislate upon the same subject, and in many cases the provisions of the two statutes are similar and almost identical. Although there is a formal repeal of the old by the new statute, still there never has been a moment of time since the passage of the act of 1888 when these similar provisions have not been in force. Notwithstanding, therefore, this formal repeal, it is, as we think, entirely correct to say that the new act should be

construed as a continuation of the old with the modification contained in the new act.''

This is the precise situation before us. Wood, in his work on Limitations (vol. 1, p. 59, 4th ed.), in discussing the statute of limitations in so far as it affects rights of action in existence when the statute is changed, states the rule as follows: ''If before the statute bar has become complete the statutory period is changed, and no mention is made of existing claims, it is generally held that the old law is not modified by the new, so as to give to both statutes a proportional effect; but that the time passed is effaced and the new law governs. The period provided by the new law must run upon all existing claims in order to constitute a bar. In other words, the statute in force at the time the action is brought controls, unless the time limited by the old statute for commencing an action has elapsed, while the old statute was in force, and before the suit is brought, in which case the suit is barred, and no subsequent statute can renew the right or take away the bar. The question, however, as to whether the statute is to have a retrospective operation is one of construction, to be determined from the language of the act and the intention of the legislature as gathered therefrom and the subject matter to which it applies; the rule being, as previously stated, that a statute will not be permitted to have a retrospective operation unless such is clearly the intention of the legislature.'' The early case of *Billings* v. *Hall,* 7 Cal. 1, is in point. In reviewing the earlier case of *Billings* v. *Harvey et al.,* 6 Cal. 381, the court said: ''We had occasion to examine the sixth section of the Act of April, 1855, limiting the time of commencing actions for the recovery of real estate to five years, and we then held, that the Act of 1855 repealed the sixth section of the Act of 1850, and that the time only commenced to run from the date of the last act. Now, the first act was passed on the 22d day of April, 1850, and the last one on the 11th of April, 1855. The time commenced to run, under the first statute, from the date of its passage, and the full measure of five years had not expired, on the repeal of the old law, by eleven days; so that the bar had not occurred before the repeal of the statute.'' (See, also, *Morris* v. *DeCelis,* 51 Cal. 55.)

Neither the *Estate of Martin* nor the instant case is at variance with anything said in the *Estate of Potter.* As pointed out in the latter case the changes made in the law were as to matters of substantial rights. They affccted both the rate of taxation and the amount to be allowed as exemptions. Further, had the construction contended for been sustained a manifest injustice would have been done. Former Chief Justice Shaw took the pains to point out many of the points of difference between the act of 1905 and the act of 1913 in the methods of appraisement of the values of inheritance, devise, bequest, or other rights subject to the payment of an inheritance tax. The learned author of that opinion makes the following pertinent observation (p. 75): "A comparison of the respective sections of the acts of 1905 and 1913 on this subject shows that while each act provides for an *appraisement* of all property subject to tax, including that passing by a prior gift as well as that passing at death, and perhaps the imposition of the tax on the whole thereof passing to the same person at the tax rates fixed by the respective acts, the language in which these provisions are expressed is not by any means the same in the two cases. The sections on the subject have been entirely recast; the 1913 section contains *many things not included in that of 1905,* and the provisions here in question are not couched in the *same* or *similar language.* It cannot be truly said that *any part* of the act of 1905 on this *subject* has not been altered, at least with respect to words, in the revision of 1913. The rule stated in the Political Code and in *Estate of Martin, supra,* applies in all proper cases, but, like all other rules of statutory construction, they are subject to the controlling principle that the object and purpose of all interpretations is to arrive at the intent of the legislature." (Italics ours.) In the discussion of section 325 of the Political Code and the *Estate of Martin* it is said (p. 74): "This rule, under some circumstances has been extended so as to apply to a case where the new statute expressly repeals the whole of the former statute. (*Estate of Martin,* 153 Cal. 228 [94 Pac. 1053].) In the Martin case the Inheritance Tax Act of 1905 had expressly repealed the act of 1893 (Stats. 1893, p. 193) on that subject. In the latter act, however, there are two sections, one of which was a literal copy of a sec-

tion of the prior act, and the other was the same as another section of the prior act, save a few words of trifling importance. These sections provided the mode of collecting tax and were *strictly remedial* in character." (Italics ours.) The question before us is also strictly one of remedial character. The act of 1905 contains all that is to be found in section 4, act of 1913, excepting the remedial provision.

[6] The rule contended for by appellants that all tax legislation must be construed most strictly against the state and most favorable to the taxpayer must be conceded. But this does not mean that the language of a statute must be given an unnatural construction to defeat tax legislation or that the evident intention of the legislature in this particular may be disregarded. "The doctrine of the strict construction of revenue statutes, however, should be applied with due regard to the intention of the legislature as expressed in the statute, and with a view to promoting the object of the statute; and especially those provisions of the statute which are intended to prevent fraud should receive a liberal construction." (36 Cyc. 1190.)

The ease with which transactions such as are in the inheritance tax laws dealt with may be successfully concealed for long periods of time from official notice and the collection of the transfer thereby defeated doubtless furnishes the reason for the removal of the bar of the statute of limitations.

The crux of appellants' claim is that the act of 1913 *is not* the act of 1905. An examination of the decisions of this court construing the several inheritance tax acts, whether they purport to be revisions or amendments, will show that it has been uniformly held that said acts have been regarded as continuous in effect and that there has been no moment of time since 1893 when some such act has not been in force and that no *one act* has been construed or considered as an unrelated or isolated piece of legislation. The intent of the legislature undoubtedly was that the bar of the statute should not be available to those who had not paid the tax as prescribed by law.

The orders and judgments appealed from are affirmed.

Lawlor, J., Lennon, J., Waste, J., Richards, J., and Myers, J., concurred.