In the Matter of the Application of the CITY OF NEW YORK, etc., Relative to Acquiring Title to and Possession of Certain Real Property, Wharf Property, Lands under Water, etc., for the Improvement of the Water Front and Harbor of the City of New York on Upper New York Bay between Simonson Avenue, Clifton, and Arrietta Street, Tompkinsville, in the Borough of Richmond, City of New York, etc..

THE CITY OF NEW YORK and Another, Respondents; GREATER NEW YORK DOCK & WAREHOUSE Co., INC., Appellant. (Appeal No. 2.)

Second Department, January 28, 1927.

**Eminent domain — proceedings to condemn land on Staten Island — waiver in lease of right of tenant to damages in case property is taken by eminent domain and option given tenant to purchase, construed as independent clauses — said option is properly within meaning of Greater New York Charter, § 969, subds. 3, 4 — not necessary for tenant to comply with lease by accepting option, for condemnation divested rights of both parties — tenant is entitled to value of option which is represented by difference between amount stipulated in option and amount awarded to owner.**

In proceedings to condemn land on Staten Island, instituted by the city of New York, in which it appears that the land in question is owned by one party and is held under a lease by another, a clause in the lease, stipulating that in case the

**388**  MATTER OF CITY OF NEW YORK (UPPER N. Y. BAY).  No. 2.

Second Department, January, 1927.  [Vol. 219

land is taken in condemnation the tenant waives all right to claim for damages arising out of the termination of the lease, is independent of another clause granting an option to the tenant to purchase the property on or before a given date, which date was after the land was appropriated by the city of New York, and, therefore, the tenant is entitled to be paid the value of its option, for such option constitutes real property as defined by subdivisions 3 and 4 of section 969 of the Greater New York Charter.

It was not necessary for the tenant to go through the futile task of making a tender to the landlord after the city had appropriated the land.

In this case the tenant is entitled to the difference between the amount awarded and the amount it would have been compelled to pay if it had exercised the option.

MANNING, J., dissents.

APPEAL by the Greater New York Dock & Warehouse Co., Inc., from a final decree of the Supreme Court, entered in the office of the clerk of the county of Richmond on the 24th day of March, 1925, upon the tentative decree and decision of the court rendered after a trial at the Kings Special Term.

*Samuel Silbiger,* for the appellant.

*Henry W. Mayo* [*George P. Nicholson,* Corporation Counsel, with him on the brief], for the respondent City of New York.

*Albert B. Boardman* and *Edwin J. Freedman,* for the respondent Stapleton Dock & Warehouse Corporation, Inc.

YOUNG, J. This is a separate appeal by the appellant from the same decree involved in the appeal by the city of New York, decided herewith (*Matter of City of New York* [*Upper N. Y. Bay*] *No. 1,* 219 App. Div. 382), so far as it affects its interest in parcels 13 and 13-a on the damage map.

On October 11, 1919, when title vested in the city of New York, parcels 13 and 13-a were owned by the respondent Stapleton Dock & Warehouse Corporation, Inc. On July 3, 1918, that corporation made and executed a lease to the Johnson Ship Building, Repair and Dry Dock Company, Inc. The name of the lessee in that lease was thereafter duly changed to the Greater New York Dock and Warehouse Company, Inc., the appellant herein. That lease contained the following clauses:

" 18. The tenant further agrees that should the whole of the demised premises be taken by the Government of the United States, the State of New York, the City of New York or any government or power whatsoever, or by any corporation under the right of eminent domain or should the whole of said demised premises be condemned by any court, City, County, State or governmental authority or office, department or bureau of the City, State or United States, that then and in that event this lease shall cease and come to an end, and in such event the tenant

shall have the right to remove all improvements placed by it upon the demised premises as heretofore provided in paragraph ' 12 ' for such removal at the expiration of the term, provided the tenant shall have duly performed all the covenants of this lease on its part to be carried out and performed up to the time of such removal, or if the buildings and improvements may not be so removed or the tenant elects not to so remove them, then the tenant may receive from the body or authority taking the property, the value of such buildings and improvements as under the terms of this lease it might have removed, as personal property and not as part of the real estate, and in no event shall the tenant receive any portion of any award made to the landlord, but its sole rights shall be limited to a separate claim for the value of the aforesaid buildings and improvements as personal property and the tenant hereby waives and relinquishes all other claim or claims for damages against said landlord or against the body, authority, party or parties acquiring the said premises, and the tenant shall not claim any other compensation or damages. * * *

" 20. At any time prior to the 1st day of January, 1922, the tenant upon giving the landlord sixty days written notice to that effect, shall have the option to purchase the demised premises and any and all improvements thereon for the sum and at the rate of Twelve hundred and fifty dollars ($1,250) per front or linear foot, measured on Front Street, which said purchase price shall be paid in cash. * * * If such option be exercised and such written notice given, the tenant shall forthwith deposit with the landlord the sum of Ten thousand dollars ($10,000) in cash on account of the purchase price, and the title shall close and the deed be delivered and the balance of the purchase price paid not more than thirty days thereafter."

The Special Term awarded $533,921.06 as the value of the land to the respondent Stapleton Dock & Warehouse Corporation, Inc.; as owner of the property. It also awarded $3,000 to the appellant for certain improvements upon these parcels. It, however, made no award to the appellant for the value of its option.

The question involved is new and interesting. There does not seem to be any decision involving the precise point presented here. The respondent contends that by the 18th clause of the lease, the appellant waived and relinquished all claim against the landlord or against the city, except for the value of the buildings and improvements, citing *Matter of Mayor, etc., of New York* (168 N. Y. 254). It was held in that case that where tenants lease property expressly subject to the contingency that the landlord might, by proceedings, under statute, in behalf of a municipality,

be deprived of the title or right to the possession of the property, they are not entitled to have *the value of their unexpired terms* ascertained and deducted from the award to the andlord in such proceedings representing the value of the property at the time it was made.

In that case, however, the lease invoved did not contain any option to the tenant for the purchase of the property. The appellant is making no claim for damages for the value of the unexpired term of its lease. Its sole claim for damage is the value of its option, and it contends, in substance, that the option contained in the lease is a separate contract, independent of the lease itself, and that the 18th clause by which it waived its right for damages related solely to any damage resulting to it from the termination of its lease by the condemnation proceeding before the expiration of the full term, and did not, in any way, relate to or affect any damage sustained by it by reason of being deprived of its rights under the option.

It is also claimed by the appellant that this option survived the termination of the lease. The clause containing the option makes no reference to any other provision of the lease nor to the termination thereof, and the appellant asserts that the option gave it the right to purchase the property at any time prior to January 1, 1922, for a certain price therein named, irrespective of whether or not the lease was sooner terminated by a condemnation proceeding or otherwise. In my opinion, this contention is sound in principle.

Briefly stated, the rights of the parties under this lease and option are as follows: The appellant had the right to occupy the premises for the term of the lease unless sooner terminated by the condemnation proceeding. When the condemnation proceeding was commenced and the title vested in the city, the lease and the tenant's full term thereunder ended. The tenant, upon such condemnation, waived any right to damages by reason of the termination of the lease except as to buildings and improvements. The tenant could not, therefore, recover from the landlord, or have awarded to it in the condemnation proceeding, anything for the value of its unexpired term. But the tenant had, under the option, the right to purchase the property at a certain price and within a certain period of time, irrespective of the termination of the lease. This option, however, was, by the condemnation, acquired by the city, and the tenant's rights thereunder vested in the city. Had the tenant exercised its option before condemnation, it would have become a vendee under an executory contract of sale. It would have then held the equitable title and estate in the property.

That it did not become such an equitable owner was because the condemnation proceeding prevented it from exercising such option during its life. After the condemnation proceeding, it could not have given any notice or made any tender provided for in the option clause, because its rights thereunder had ceased and had vested in the city. In other words, these rights were taken away by the city in the condemnation proceeding and the award made shows that they were valuable.

In my opinion, the tenant should not be held to have waived its right to damages resulting from the abrogation of its option, unless some controlling authority compels us to construe the 18th clause of the lease as having that effect. I think that clause 18 and clause 20 can be so reconciled as to give each its proper effect, and without conflicting with the subject-matter of the other. In other words, I think clause 18, concerning the waiver of damages, relates to such damages as might be suffered by the tenant by the abrogation of the lease before the expiration of the full term, and has no relation to the subject-matter of clause 20 which stands distinct and independent of the other provision of the lease, as an option to purchase the property. I think this construction is supported by *Poillon* v. *Gerry* (179 N. Y. 14). In that case it was held that when apparently conflicting provisions in a lease, one, that the lessor should be entitled to any award for the premises if taken by the public authorities, and the other, giving the lessee the right to remove the buildings on the premises at the expiration of the term, may be so reconciled as to give each its proper effect, it was error to dismiss the complaint of the lessee in an action against the lessor to recover the amount awarded and paid to him by the municipal authorities for the buildings. The court, in that case, said: " At first glance, the clause of the lease which provides that the defendant shall be entitled to any payment or award for the taking of the premises, seems to be dominant and exclusive. But when both of the quoted clauses are read together, as they must be in the effort to ascertain the intent of the parties, it seems clear that each may be given effect without destroying the other. Under the first clause the defendant, as owner of the land, is to receive any award for the taking thereof and the plaintiff, as tenant, waives all right to damages for inter- ference with or abridgment of his possession or term. In other words, the owner is to take the award just as he would if there were no lease, and the tenant waives his right to any part of it, as well as any claim for damages against the owner. Under the second clause the tenant, if he has complied with the conditions of the lease may, at the expiration of his term, remove the buildings

**392** MATTER OF CITY OF NEW YORK (UPPER N. Y. BAY). No. 2.

Second Department, January, 1927. [Vol. 219

which he claims to own. Thus construed these clauses of the lease are consistent with each other. Unless they are thus construed, one or the other must be held to be meaningless. Under the well-established rule that contracts must, if possible, be so construed as to give effect to all their parts, we think neither of these provisions is repugnant to the other." (P. 18.)

So, it seems to me, that in the case at bar these two apparently conflicting clauses in this lease may be reconciled in like manner. The clause by which the appellant waived any claim for damages in the event that the property should be condemned, should, in my opinion, be construed to mean simply a waiver of any damages which otherwise would be payable to the appellant for the value of the unexpired term of the lease, and not to include any damages which resulted from the destruction of its valuable right under the option to purchase, given by the 20th clause of the lease. I think the latter clause, although contained in the same instrument with the former, is an independent contract, having no relation to the lease itself. This opinion is supported by authority. In *Mathews Slate Co.* v. *New Empire Slate Co.* (122 Fed. 972) the lease involved contained an option to purchase, and it was held that plaintiff's right to a conveyance thereunder was not in any way dependent upon the performance or non-performance of the terms and conditions in the lease and could not be made so dependent. In *Prout* v. *Roby* (15 Wall. [82 U. S.] 471), which involved a covenant to convey contained in a lease, it was said: " If the covenant had been to convey, upon the payment of the purchase money during the life of the lease, putting an end to the lease would have destroyed the covenant. But the covenant is to convey whenever the purchase money should be paid. In such cases the conveyance may be demanded at any time, and the existence or nonexistence of the lease when the demand is made is immaterial to the rights of the parties."

But it is claimed by respondent that a lessee's option to purchase is not an estate for which he is entitled to recover compensation in addition to the value of his leasehold (citing 20 C. J. 742, § 194, and *Cornell-Andrews, etc., Co.* v. *Boston & Prov. R. R. Corp.*, 209 Mass. 298). I do not think, however, that these authorities have any application to the case at bar, because, under the statute which governs the right to compensation for taking property in condemnation, in this proceeding such right does not depend upon the possession by claimant of an estate, legal or equitable, in the land, as that term is usually understood in the law. Under the Greater New York Charter an " owner " is entitled to compensation for " real property " taken, and the word " owner " is defined to

mean " a person having an estate, interest or easement in the real property to be acquired." (Laws of 1901, chap. 466, § 969, subd. 3, as added by Laws of 1915, chap. 606.) The words " real property " are defined to include " every estate, interest, and right, legal or equitable, in lands or water, and right, interest, privilege, easement and franchise relating to the same." (Id. § 969, subd. 4, as added by Laws of 1915, chap. 606.)

These definitions seem to me clearly broad enough to comprehend the appellant as an " owner " and its right under the option as " real property."

The respondent further contends that the appellant never complied with the terms contained in the option, and that there was no acceptance of it, and that, therefore, it cannot have any portion of the award made for the property. But, after title vested in the city, under this proceeding, the appellant was not required to go through the idle ceremony of giving the required notice and making the necessary tender, because, when the city took title to the property, the rights of both parties under the option were divested and merged in that title. Respondent could not comply with the option by giving a conveyance, nor could the appellant gain anything by any attempt to comply with its terms. The law does not require parties to do futile things in order to save their rights.

While the question is not free from doubt, I think the appellant should justly have an award for the value of its option. This would be the difference between the award and the purchase price contained in the option. This value would amount to $100,171.06. This should not, of course, be in addition to the $533,921.06 awarded to the landlord by the decree, but this latter award should be divided so as to give the landlord $433,750, the purchase price under the option, and the appellant the balance of the award, $100,171.06.

The decree should, therefore, be modified in accordance with this opinion, without costs. This modification is provided for in our decision on the appeal by the city of New York from the same decree (219 App. Div. 382).

KELLY, P. J., JAYCOX and KAPPER, JJ., concur; MANNING, J., dissents.

Decree modified in accordance with opinion of YOUNG, J., and as provided in opinion per curiam, upon appeal by the city of New York from the same decree (219 App. Div. 382), decided herewith; and as so modified decree affirmed, without costs. Settle order on notice.