[Civ. No. 1329.  Fourth Appellate District.—March 20, 1935.]

RCA PHOTOPHONE INC. (a Corporation), Appellant, v. M. D. HUFFMAN, Respondent.

Ray W. Hays for Appellant.

David E. Peckinpah for Respondent.

MARKS, J.—Plaintiff brought this action to recover possession of certain RCA photophone sound equipment of the value of $1500 which had been leased to T. Miwa and which defendant claimed under a sale for delinquent taxes made by the assessor of Fresno County. Judgment was rendered against plaintiff on its complaint and in favor of defendant on his cross-complaint. The appeal is taken from that judgment.

On October 15, 1930, plaintiff leased the sound equipment to T. Miwa for a term of years. It was installed in the Lyceum Theatre in the city of Fresno. Under the contract Miwa was given only a possessory right in the property. He agreed to pay all taxes and assessments levied upon it and to furnish plaintiff with evidence that he had done so. He failed to list the property for assessment and it was not assessed in the fiscal year 1931–32. The assessor of Fresno County discovered this omission in 1932 and made a double assessment for the fiscal year 1932–33. It was assessed to Lyceum Theatre—T. Miwa and the tax computed at $80.69, which was not paid. The tax collector seized the property, gave the required notice of sale, and

sold it to defendant for $83.69. Plaintiff tendered defendant the amount which he had expended and demanded possession. The demand was refused and this action followed.

It is contended by plaintiff that the assessment, seizure and sale by the tax collector were void and conveyed no title to defendant for the reasons that (1) the property had not been assessed to its owner, and (2) if it be conceded that personal property may be assessed to one in whose lawful possession it is found, it cannot be seized and sold by the assessor unless it is assessed to its owner. The questions seem to be of the first impression in California.

■ Plaintiff first points out that as tax proceedings are *in invitum* they must be in strict accord with the statutes governing them; that taxing statutes must be strictly construed in favor of the citizen and against the taxing power. Both propositions are supported by unquestioned authority. (*Lake County* v. *Sulphur Bank Q. M. Co.*, 66 Cal. 17 [4 Pac. 876]; *City of San Luis Obispo* v. *Pettit*, 87 Cal. 499 [25 Pac. 694]; *Pioneer Express Co.* v. *Riley*, 208 Cal. 677 [284 Pac. 663]; *Merchants Trust Co.* v. *Hopkins*, 103 Cal. App. 473 [284 Pac. 1072].)

Section 3628 of the Political Code provides in part as follows: "The assessor must, between the first Mondays in March and July of each year, ascertain the names of all taxable inhabitants, and all the property in his county subject to taxation, except such as is required to be assessed by the state board of equalization and must assess such property to the persons by whom it was owned or claimed, or in whose possession or control it was, at twelve o'clock meridian of the first Monday in March next preceding; but no mistake in the name of the owner or supposed owner of real property shall render the assessment thereof invalid, nor shall anything herein release any person, firm, corporation or association from their duty to file the statement required by law."

Sections 3791, 3792, 3794, 3820 and 3821 of the Political Code provide for the collection of taxes on personal property by summary seizure and sale where the tax is not secured by a sufficient lien upon real property. Section 3821 contains the following: "In the case provided for in the preceding section, at the time of making the assessment, or at any time before the first Monday of August following

the assessment, the assessor may collect the taxes by seizure and sale of any personal property owned by the person against whom the tax is assessed, . . . ''

We are of the opinion that the plain provisions of section 3628 of the Political Code gave the assessor the right to assess personal property to the person in whose lawful possession it was found at 12 o'clock noon on the first Monday in March of each year and that as the property in question here was in the possession of T. Miwa in his Lyceum Theatre the assessment to him was properly and legally made. There is nothing in the case of *Weyse* v. *Crawford,* 85 Cal. 196 [24 Pac. 735], conflicting with this conclusion. There is *dicta* on page 202 of that case supporting it. (See, also, *dicta* in *Title Guaranty & Trust Co.* v. *County of Los Angeles,* 3 Cal. App. 619 [86 Pac. 844], and *Merchants Trust Co.* v. *Hopkins, supra.*)

The results which will follow a proper assessment are set forth in section 3716 of the Political Code as follows: ''Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all property of the delinquent: . . . ''

Up to this point our course is clearly platted by the provisions of the Political Code. The taxes computed on the assessment had the effect of a judgment against Miwa and created a lien upon the personal property equal in effect to the levy of an execution. The difficulty in the case does not arise until the time for the seizure and sale of the property under the provisions of section 3821 of the Political Code which gives the assessor power to satisfy the tax by the ''seizure and sale of any personal property *owned by the person against whom the tax is assessed.*'' (Italics ours.) Thus we have this question squarely presented: Where an assessment of personal property is lawfully and regularly made against a person in lawful possession but who is not its owner, can the tax be collected at all by the seizure and sale of the property?

We cannot overlook the far-reaching effect which the answer to this question must necessarily have on the collection of taxes on personal property in this state. There are many thousands of articles of personal property sold each year on conditional sales contracts and many more thousands

held by nonowners under leases. They range all the way from articles of home furnishing of relatively small value to property of very considerable worth. To require the assessors to ferret out the legal owner of each of these pieces of personal property would place upon them a task almost impossible of fulfillment. To hold that the tax on personal property lawfully assessed to its possessor could not be collected by its seizure and sale would surely result in the escape from taxation by many, as no other adequately workable means for collecting these taxes is given by the law. We should not reach such a result unless there is open no avenue of escape from it, as it is the fundamental law in California that the burden of the support of government shall be equally spread and that ''all property in the state except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided.'' (Art. XIII, sec. 1, Const.)

While it is true that statutes under which taxes are levied for public purposes are to be strictly construed in favor of the individual and against the taxing power it is equally true that language must not be given an unnatural construction in order to defeat the tax legislation nor the plain intent of legislation disregarded. (*Riley* v. *Havens,* 193 Cal. 432 [225 Pac. 275].) It is also true that the courts, when the language will reasonably permit, will so construe statutes that they may become operative rather than give a construction that will defeat them. (Sec. 3541, Civ. Code; *Glassell Development Co.* v. *Citizens National Bank,* 191 Cal. 375 [216 Pac. 1012, 28 A. L. R. 1427].) The codes must be construed together and harmonized wherever possible. (Sec. 4480, Pol. Code; *People* v. *Central Pac. R. R. Co.,* 83 Cal. 393 [23 Pac. 303].)

With these fundamental rules in mind we must proceed to the task of determining the intention of the legislature in clearly providing that personal property could be assessed to its lawful possessor, a valid lien thereby being created upon it with no workable machinery provided to foreclose the lien if section 3821 of the Political Code does not permit the summary seizure and sale of the property so assessed. In other words, we must determine what limitation the legislature placed upon the powers of the assessor when it pro-

vided that he could seize and sell *personal property owned by the person against whom the tax is assessed* and at the same time gave him no express power to seize and sell property assessed to its lawful possessor.

■ In approaching this problem we are well aware of one useful definition of the owner of property as ''one who has dominion of a thing, real or personal, corporeal or incorporeal, which he has the right to enjoy and do with as he pleases—either to spoil or destroy it as far as the law permits—unless he be prevented by some agreement or covenant which restrains his right''. (6 Words & Phrases, 1st Series, 5135, and cases cited.)

A broader interpretation of the term ''owner'' was given by this court in the case of *Lindsay-Strathmore Irr. Dist.* v. *Wutchumna Water Co.,* 111 Cal. App. 688 [296 Pac. 933], where it is said: ''As was said by the Supreme Court in the case of *Miller* v. *Imperial Water Co.,* 156 Cal. 27 [24 L. R. A. (N. S.) 372, 103 Pac. 227, 229]: 'The terms ''owning'', ''owner'', ''owned'', depend somewhat for their signification upon the connection in which they are used. They are not technical, but general terms, and are, therefore, liberally construed, ''the precise meaning depending upon the nature of the subject-matter and the connection in which'' they are used.' '' There the plaintiff was the owner of stock in the defendant whose by-laws provided that water should be delivered to owners of its stock and refused to deliver water to the owners of land within the plaintiff district because they were not owners of defendant's stock. It was held that the definition of the clause in question should be broad enough to include the owners of land in the plaintiff district even though they were not individually owners of the defendant's stock.

In the case of *Texas Bank & Trust Co. of Beaumont* v. *Smith,* 108 Tex. 265 [192 S. W. 533, 2 A. L. R. 771], it was held that while the term ''owner'' as generally used signifies a person who has the legal title to property, still under a statute giving a paramount lien for water furnished lands for irrigation, the term was held to include both the owner of the legal title and the tenant in possession.

The following cases support the conclusion that the terms ''owner'' and ''owned'' may be so defined as to include a person possessing such interest in property that he has

lawful possession of it. (*Wyatt* v. *Beard,* 179 Ark. 305 [15 S. W. (2d) 990]; *Echlers* v. *Chicago B. & Q. R. Co.,* 118 Neb. 477 [225 N. W. 468]; *McLevis* v. *St. Paul Fire & Marine Ins. Co.,* 165 Minn. 468 [206 N. W. 940]; *Frazer* v. *Hawkins,* 137 Ark. 214 [208 S. W. 296]; *Rule* v. *Sioux County,* 94 Neb. 736 [144 N. W. 896]; *Matter of City of New York (In re Water Front in Tompkinsville, Borough of Richmond),* 219 App. Div. 387 [220 N. Y. Supp. 23]; *Dunbar* v. *Texas Irr. Dist.,* (Tex. Civ. App.) 195 S. W. 614; *Cayce Land Co.* v. *Southern Ry. Co.,* 111 S. C. 115 [96 S. E. 725]; *McGowan* v. *Morgan,* 160 App. Div. 588 [145 N. Y. Supp. 787]; *Wisconsin River Log-Driving Assn.* v. *D. F. Comstock Lumber Co.,* 72 Wis. 464 [40 N. W. 146, 1 L. R. A. 717]; *Payne* v. *Sheets,* 75 Vt. 335 [55 Atl. 656]; *Woodstock Hardwood & Spool Mfg. Co.* v. *Charleston Light & Water Co.,* 84 S. C. 306 [66 S. E. 194]; *Commonwealth* v. *Smith & McGuiar,* 127 Ky. 171 [105 S. W. 397]; *Convis* v. *Citizens' Mutual Fire Ins. Co.,* 127 Mich. 616 [86 S. W. 994].)

We therefore conclude that the term "owner" may include others than the possessor of the legal title to property and is often used to designate persons in legal possession. From this premise and the fact that it would have been a futile act on the part of the legislature to empower the assessor to assess personal property to its lawful possessor and provide no efficiently workable means of collecting the tax computed on such assessment after it was legally made, we are of the opinion that when the legislature used the word "owned" in section 3821 of the Political Code it had in mind its broader definition and intended to give the assessor the power of seizure and sale of personal property lawfully assessed under the provisions of section 3628 of that code.

■ Plaintiff urges that the assessor could have learned the true owner of the property by inspecting markings upon it. This may be true but there is no showing that he actually knew of these markings. Furthermore, if we are correct in our interpretation of the sections of the Political Code under consideration, unsecured personal property may be assessed to either its legal owner or its lawful possessor.

Plaintiff advances as further grounds for a reversal of the judgment (1) that the sale was void for the reason that

it was made for the purpose of collecting taxes assessed in more than one year before the seizure and sale, and (2) the sale should be set aside because of the gross inadequacy of the price bid by defendant.

■ We do not understand that the property was assessed at all during the fiscal year preceding its sale. While the bill of sale given defendant is inartistically drawn we think the record justifies the conclusion that the property having escaped assessment in the preceding fiscal year, it was given a double assessment in the year of its sale in accordance with the provisions of section 3649 of the Political Code.

■ We do not believe that the price which was bid and paid can be controlling in cases of this kind. The law contemplates that the selling price shall at least equal the tax, penalties and costs. The sale is for the benefit of the taxing body and it is expected that the price will bring it out whole. This is the first concern in tax sales and not that the owner may receive the reasonable value of his property. If this were required there would be few bidders at tax sales because of the uncertainty of the title given and the probability of expensive litigation testing that title. The books are full of cases in which tax titles have been held void.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 16, 1935.