No. 23277.

THE CITY AND COUNTY OF DENVER, A MUNICIPAL CORPORA-
TION, ORGANIZED AND EXISTING UNDER THE CONSTITUTION
AND LAWS OF THE STATE OF COLORADO, CHARLES TEMPLE,
AS MANAGER OF REVENUE AND EX-OFFICIO ASSESSOR AND
EX-OFFICIO TREASURER OF THE CITY AND COUNTY OF DEN-
VER, THE BOARD OF EQUALIZATION OF THE CITY AND COUNTY
OF DENVER, AND WILLIAM H. MCNICHOLS, JR., CHARLES
KENDRICK, CHARLES L. TEMPLE, FERNANDO SERAFINI, AND
IRVING S. HOOK, IN THEIR CAPACITIES AS, BEING, AND CON-
STITUTING THE BOARD OF EQUALIZATION OF THE CITY AND
COUNTY OF DENVER *v.* SECURITY LIFE AND ACCIDENT
COMPANY.
(477 P.2d 869)

Decided November 30, 1970.

Max P. Zall, City Attorney, W. Keith Peterson, Assistant, for plaintiffs in error.

Gorsuch, Kirgis, Campbell, Walker & Grover, Leonard M. Campbell, C. E. Eckerman, for defendant in error.

*En Banc.*

Mr. Justice Groves delivered the opinion of the Court.

This writ of error is directed to a judgment awarding the return of taxes paid under protest. The question involved is whether a lessee of office furniture and equipment leased to it by national banks was liable for an ad valorem tax levied against this personal property for the year 1965. We answer in the negative and affirm the summary judgment in favor of the defendant in error (herein referred to as Security Life).

By two bills of sale dated January 3, 1964, Security Life transferred to the Security National Bank (called Security National) and the First National Bank of Englewood (herein referred to as First National) office furniture and equipment which Security Life had acquired and used beginning in the year 1930. The bill of sale to Security National recited a cash consideration paid by the

250

bank of $254,940.92. The other bill of sale stated that the consideration paid by First National was $147,644.79. Under date of January 4, 1964, Security National leased to Security Life the personal property transferred to it for a term of six years at a rental of $299,897.28. By similar lease dated January 4, 1964, First National leased to Security Life the personal property so acquired by it for a six-year term at a rental of $173,681.28.

Under a third document dated December 21, 1964, First National leased to Security Life other office furniture and equipment for six years at a rental of $11,028.24. This property had been acquired by Security National in 1964 and "assigned" to First National. At the times of acquisition it had been delivered by the suppliers directly to Security Life.

For a number of years prior to 1970 the States and their subdivisions could not levy taxes against the tangible personal property of national banks. 12 U.S.C. 548.[1] Not being able to tax this as the property of the lessor national banking associations, the officials of the City and County of Denver levied ad valorem taxes for the year 1965 against all of the leased personal property as that of Security Life.

Our statutes, which authorize and direct the taxation of personal property, refer to the taxation of the "owner" or "person owning," of property "subject to ownership," and "by reason of ownership." 1965 Perm. Supp., C.R.S. 1963, 137-5-7(1), 10(1) and 13(1); 1965 Perm. Supp., C.R.S. 1963, 137-1-1(3) and (9) and 1965 Perm. Supp., C.R.S. 1963, 137-5-22(2). This case turns on the simple propositions that a lessee is not an owner and that, if a lessee's interest in personal property is to be taxed, there must be a statute specifically so stating. While this result does not flow from strict construction, the provision of our property tax statute requiring strict

---

[1] This taxation was later permitted by an amendment adopted by the Congress on December 24, 1969. P.L. 91-156. Colorado reacted thereto on March 13, 1970 by enacting C.R.S. 1963, 138-5-44 and repealing 1965 Perm. Supp., C.R.S. 1963, 138-1-55. Colo. Sess. Laws 1970, ch. 97.

construction fortifies the result. 1965 Perm. Supp., C.R.S. 1963, 137-1-2.

With three exceptions, the many cases cited by Denver are foreign to this situation. Some of these cases deal with the taxation of the equity of a vendee in a conditional sales contract. Conditional sales contracts are not involved here.

The three cited cases which may bear some consideration are *Rummell v. Musgrave,* 142 Colo. 249, 350 P.2d 825 (1960), *appeal dismissed for lack of a federal question,* 364 U.S. 293, 81 S.Ct. 105, 5 L.Ed.2d 83; *RCA Photophone v. Huffman,* 5 Cal. App.2d 401, 42 P.2d 1059 (1935); and *Offutt Housing Company v. County of Sarpy,* 160 Neb. 320, 70 N.W.2d 382 (1955), *aff'd,* 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151.

In *Rummell* the plaintiffs in error were mining uranium ore as lessees of property from the United States of America. They were taxed under the statute which provides for the assessment of producing mines and the levy of an ad valorem tax upon the value so assessed. C.R.S. '53, 137-5-4 (in modified form it is now 1965 Perm. Supp., C.R.S. 1963, 137-6-5). This statute applied to "Every person, corporation or association owning or operating any mines or mining claims which shall be a producing mine . . ." It further provided that the assessed value of a mine or mining claim for any year should be one-fourth of the gross proceeds or the amount of the net proceeds of the preceding year, whichever is larger. One of the distinctive facts was that the ore mined by the lessees became the property of the lessees. They were "operating" a mine and, therefore, came within the terms of the statute. Here, the title to the property remains in the lessor. The important factor is that a specific statute authorized the tax.

The following statement in *Rummell* was over-broad: "The trial court determined that there is a difference between the assessment of possessory and leasehold rights of private citizens, and an attempt to assess the United

States of America in its ownership of the land in question. We agree that the former is valid under our statutes and that the latter would be an invasion of the rights of the federal government."

We consider *Rummell* as authority only for the matter there decided, *i.e.*, the assessment of a leasehold right was valid under the statute being considered. Obviously, there was not before the court the validity of assessment under other statutes of non-mineral leasehold rights. Therefore, we consider *Rummell* inapplicable to the instant matter.

In *RCA Photophone v. Huffman, supra,* personal property was taxed to the lessee. In contrast to our statute, the California statute gave specific authority to the assessor to assess property "to the persons by whom it was owned or claimed, or in whose possession or control it was." Our attention has not been directed to any provision of our statutes permitting property to be taxed to a non-owner in whose possession it is found.

*Offutt Housing Company v. County of Sarpy, supra,* upheld the taxation to the lessee measured by the full value of buildings and improvements. The United States was the lessor. The term of the lease was for seventy-five years, and the buildings and improvements had an estimated life of only the first thirty-five years of that term. The full enjoyment of the buildings and improvements were in the lessee. In contrast, here the banks have a substantial reversionary interest. We, therefore, distinguish *Offutt*.

 Denver contends that, in the absence of an authorizing statute, it can still tax this personal property to the lessee under the provisions of Sections 3, 4, 5, 6, 9 and 10 of Article X of the Colorado constitution. In support of the proposition it cites *Imperial Fire Insurance Co. v. Denver,* 51 Colo. 456, 118 P. 970 (1911); *D. & R. G. Ry. Co. v. Church,* 17 Colo. 1, 28 P. 468 (1891); and *Carlisle v. Pullman P. C. Co.,* 8 Colo. 320, 7 P. 164 (1885). These cases are distinguishable. Moreover, the opinion in *Car-*

*lisle* indicates and that in *Church* hints that Art. 10, Sec. 10 is not self-executing and requires implementing legislation. Art. X, Sec. 3 provides that "All taxes . . . shall be levied, assessed, and collected under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of taxes upon all property, real and personal . . . ." The attempted taxation must be under the authority of a statute and cannot be authorized solely by our constitutional provisions.

Denver contends that under Colo. Const. Art. X the national banking associations could not be exempted from taxation of their personal property. While we doubt the correctness of this argument, we are not here concerned with whether the banks were taxable, but only whether the lessee was.

In the briefs and more particularly in oral argument Denver stated or inferred that these bills of sale and leases were simply disguises under which Security Life could borrow money at usual interest rates and the personal property would be tax free. This is predicted upon Denver's assumptions that the difference between amounts payable as rental and the considerations expressed in the bills of sale are interest and that upon the termination of the leases Security Life will be the owner of the property. There is absolutely nothing in the record to support either of these assumptions. For aught that appears in the record, upon the expiration of the terms of the leases, the office furniture and equipment will be the property of the banks. There is nothing in the record to support Denver's contention made during oral argument that the banks have only a "paper title" and that the arrangement was a subterfuge. To justify such assertions, Denver had the duty of making a showing to support them.

Judgment affirmed.