Arthur A. ARNHOLD et al., Plaintiffs,

v.

UNITED STATES of America et al., Defendants.

RAYONIER INCORPORATED, a Delaware corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. 2956, 3533.

United States District Court W. D. Washington, N. D.

June 23, 1958.

Ferguson & Burdell, William H. Ferguson and William Wesselhoeft, Seattle, Wash., for plaintiffs Arnhold, et al.

Wright, Innis, Simon & Todd and Donald A. Schmechel, Seattle, Wash., for defendant Port Angeles and Western R. R. Co. and trustee in reorganization.

Skeel, McKelvy, Henke, Evenson & Uhlmann, William R. McKelvy and William Springer; Kahin, Carmody & Horswill, George Kahin and Byron D. Coney,

Seattle, Wash., for defendant Fibreboard Products, Inc.

Holman, Mickelwait, Marion, Black & Perkins, Lucien F. Marion and Burroughs B. Anderson, Seattle, Wash., for plaintiff Rayonier Inc.

Charles P. Moriarty, U. S. Atty., Francis N. Cushman, Asst. U. S. Atty., Seattle, Wash., and Arno Reifenberg, Dept. of Agriculture, Portland, Ore., for the government.

BOLDT, District Judge.

In cause #3533 Rayonier Incorporated seeks recovery of damages from the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680, for loss of standing timber and other property allegedly caused by negligence of employees of the United States Forest Service in failing to prevent, control and extinguish a forest fire, ultimately of disaster proportions, which occurred in August and September of 1951 on the Olympic Peninsula, Washington and is known as the Forks fire from the name of a town in the vicinity. In cause #2956 plaintiffs Arnhold and several other owners of residential and other property damaged in the fire, on identical allegations of negligence, seek similar recovery against the United States and join as additional defendants the Port Angeles and Western Railroad Company and Fibreboard Products, Inc., alleging negligence of each and both causing or contributing to the damage complained of and asserting jurisdiction of the claims against the additional defendants under 28 U.S.C. § 1332 by diversity of citizenship. The two entirely independent actions were consolidated for hearing on motions to dismiss, pretrial conferences and for trial of liability issues.

On motion of the United States, this court, relying on language in the Dalehite v. United States opinion, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, dismissed both actions on the ground that the complaints failed to state a claim against the United States upon which relief could be granted. The Court of Appeals affirmed, Rayonier Inc., v. United States, 9 Cir., 1955, 225 F.2d 642. The Supreme Court reversed, 1957, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354, vacating the judgment of this court and that of the Court of Appeals. The cases were remanded to this court with instructions (352 U.S. at page 321, 77 S.Ct. at page 377) " * * * to determine [the] sufficiency [of the allegations of the complaints] * * * to impose liability on a private person under the laws of the State of Washington."

Further hearing of the motions to dismiss on the allegations of the complaints was not sought. By several pretrial conferences the many issues in both cases were framed and clarified in pretrial orders superseding all former pleadings. At the instance of counsel for all parties and in their company the court made an extensive two-day tour of the entire area of the fire visiting and inspecting every place of particular significance later referred to in the evidence. Damages have been stipulated at a total of $300,266.31 for plaintiffs Arnhold, et al, and at $895,000 for Rayonier Incorporated. Trial of all liability issues in both cases has been completed. The facts pertaining to liability as they now appear, either by agreement of the parties in the pretrial orders or from findings on the evidence produced at the trial, are fully stated in Findings of Fact entered by the court with the filing of this opinion. Such Findings, constituting the controlling statement of the court's determination of facts,[1] are detailed and lengthy. Only the salient facts found will be mentioned herein.

At all times pertinent to this litigation the United States was the owner of substantial tracts of forest land on the Olympic Peninsula, including section 30, Township 30 North, Range 10 West, Willamette Meridian, within the Soleduc District of the Olympic National Forest. Prior to and effective during the sum-

---

1. Tittman v. Great Northern Railway Co., 9 Cir., 1958, 252 F.2d 793, at page 800.

mer of 1951 the Forest Service, with lawful authority so to do by 16 U.S.C. § 572, had entered into a "cooperative agreement" with the State of Washington under RCW 76.04.400 whereby the Forest Service undertook to protect certain designated lands, including said section 30, against fires and to take "immediate vigorous action" to control all fires occurring within the protected area. All of the land covered by the Forks fire prior to September 20, 1951 and most of plaintiffs' property burned thereafter was within the area for which the Forest Service had assumed fire protection responsibility, and such fact was known and relied upon by plaintiffs.

In 1937 the common carrier Port Angeles and Western Railroad Company, hereafter called PAW, entered into a conditional sale contract for the purchase from the United States of a railroad and railroad right of way running generally in an east-west direction between the towns of Forks and Port Angeles and passing through section 30. Under the terms of the contract the vendor United States, during the executory term of the contract which includes the period involved in this litigation, retained title to the railroad property including the right of way. Right of inspection thereof was reserved to the United States. Forfeiture at the option of vendor was provided for in the event of vendee's default in any of the conditions of the contract. One such condition was compliance by vendee with all state and federal fire laws and regulations. PAW, now in bankruptcy reorganization, was in financial difficulties in August of 1951 and had been for some years prior thereto. For that reason portions of its right of way had been permitted to fall into substandard condition in that weeds, grass and brush of various sizes and types grew near and between the tracks, about 25% of the track ties were rotten, and discarded rotten ties had been left on the right of way within a few feet of passing trains.

The spring and summer of 1951 were among the driest on record in the Soleduc District. Due to below normal rainfall and lower than normal relative humidity burning conditions in August, 1951 were severe. In a forest closure notice published by the Forest Service for the period July 2 through September 15, 1951 the Soleduc River area was described as a region of extra fire hazard.

Midday on August 6, 1951 heated metal or sparks from a PAW locomotive, eastbound with a train load of logs, ignited a series of small spot fires along the PAW right of way. It is not alleged by plaintiffs nor is there evidence showing that the release from the engine of fire igniting material was due to negligence. One of the fires originally started at a point on the right of way in section 30 almost due south of a settlement known as Heckleville. This particular spot fire eventually grew into the conflagration which gives rise to this litigation and will be referred to as the Heckleville spot fire. All of the other August 6 fires were extinguished that day before they caused any material damage.

At about 12:30 p. m. on August 6 the Forest Service lookout at North Point on a high peak north of Heckleville reported to Snider Ranger Station of the Forest Service the sighting of smoke arising from a spot fire on government land in or near the PAW right of way in section 35, Township 30 North, Range 11 West, Willamette Meridian. Section 35 is immediately west of section 30 wherein the Heckleville fire started. To the scene of the fire reported at 12:30, district ranger Floe of the Forest Service promptly dispatched in a radio-equipped panel truck his entire immediately available fire suppression force, consisting of five men equipped with hand firefighting tools, under control of assistant district ranger Evans. At 1:00 p. m. the lookout reported the smoke of the Heckleville spot fire to Floe. Meanwhile the PAW train crew, aware of at least one of the fires burning on the right of way, had stopped at Fibreboard Camp #1 (about 2 miles east of Heckleville) intending to sidetrack its loaded train and return the locomotive, which carried firefighting hose and equip-

ment, to the scene of the fires. However, when the crew attempted to back the train on to a siding it was discovered that a broken equalizer bar had so lodged itself against the wheels of the locomotive as to make reverse travel impossible.

At about 1:30 p. m. Floe, having been informed by the PAW general manager of the inability of the PAW locomotive to reverse its course, was able to contact Evans by radio and advise him of the Heckleville fire. At that time Evans and the suppression crew were still in action on the first reported fire and about 2 miles distant along the right of way from the initial site of the Heckleville spot fire. At 2:10 p. m. Floe alerted State of Washington warden MacDonald of the adjacent Beaver state forestry district to stand by ready to send assistance. At 2:30 p. m. Evans and 3 men, having travelled about 5 miles by truck and foot and after wading the Soleduc River, arrived at the Heckleville spot fire and reported its dimensions to Floe who immediately requested assistance from MacDonald. By 3:00 p. m. the fire was spreading and spotting ahead of the main body of fire beyond control of the men and equipment at the scene. A Rayonier locomotive, previously requested by Floe, arrived at the fire at about 3:15 p. m. The state crew of 7 men and a Rayonier crew of 25 men all equipped with hand tools, arrived at about 4:00 p. m. By 5:00 p. m. 2 Fibreboard bulldozers, a PAW locomotive, 4 Rayonier hand pumps, and at least 15 additional men arrived at the scene. Floe personally was present at the fire some time between 4:00 and 7:00 p. m. No appreciable firefighting activities were conducted at the scene of the fire on August 6 after 5:00 p. m.

The following morning, August 7, 1951, firefighting commenced under Floe's direction between 6:00 and 7:00 a. m., with the objective of restricting and suppressing the fire within the 60 acres then involved. At about 2:30 p. m. a stiff breeze arose which, in spite of control and confinement measures in effect at the time, drove the fire out of control over fire lines and spread it into an area of about 1,600 acres of timberland generally south and east of Heckleville. The land in this area was owned by the government and by Fibreboard Products Inc. The blaze was largely brought under control within the 1,600-acre area by August 10, 1951.

Some traces of fire continued to erupt in various parts of the affected area, particularly in two former logging landings referred to as "L–1" and "L–2", until the night of September 19–20, 1951. During that night a wind of extremely high force for that time of year, under conditions of high temperature and low humidity unusual for nighttime, fanned hidden embers into a flame which crossed or jumped the fire lines and quickly spread to inflammable material to the west of the 1,600-acre area. From there it moved rapidly and at times by great jumps for a distance of 20 miles in a southwesterly direction to and within the town of Forks. All of the damage to plaintiffs' property for which recovery is sought in these actions occurred on and after September 20 following escape of the fire from the 1,600-acre area.

Several statutes and many decisions have been cited as stating or indicating Washington state law concerning the liability of private persons for damage from fire both in and out of forest lands. In these authorities the following principles appear:

The owner or occupant of land in or near a forest area who with due care starts fire on such land for a lawful purpose, such as land clearing, must exercise ordinary and reasonable care to prevent spread of the fire to the damage of others. Failure to perform such duty is negligence rendering the party guilty thereof liable for all damage proximately resulting therefrom. If, despite the exercise of reasonable care by the owner or occupant of land, a fire not negligently started by him escapes his premises, he will not be liable for subsequent damage caused by the fire. Sandberg v. Cavanaugh Timber Co., 1917, 95 Wash. 556, 164 P. 200; Galbraith v. Wheeler-Osgood Co., 1923, 123 Wash. 229, 212 P. 174;

Lehman v. Maryott & Spencer Logging Co., 1919, 108 Wash. 319, 184 P. 323; Burnett v. Newcomb, 1923, 126 Wash. 192, 217 P. 1017; Mensik v. Cascade Timber Co., 1927, 144 Wash. 528, 258 P. 323; Criscola v. Guglielmelli, 1957, 50 Wash.2d 29, 308 P.2d 239.

■ The owner or occupant of forest land who, regardless of purpose, negligently starts a fire on such land which, with or without his further negligence, spreads to damage others is liable for all damage proximately caused by such fire. Ulrich v. Stephens, 1908, 48 Wash. 199, 93 P. 206; Jordan v. Welch, 1911, 61 Wash. 569, 112 P. 656; Seibly v. City of Sunnyside, 1934, 178 Wash. 632, 35 P.2d 56; (see R.C.W. 76.04.220 and Spokane International Railway Co. v. United States, 9 Cir., 1934, 72 F.2d 440 attaching civil liability to violation of standard of care established by criminal statute.)

■ An owner or occupant of forest land with knowledge of a fire burning on such land, even though started by strangers, must exercise ordinary and reasonable care to prevent spread of the fire to the damage of others. Failure to do so is negligence rendering the landowner or occupant liable for all damage proximately resulting therefrom. Sandberg v. Cavanaugh Timber Co., supra; Jordan v. Spokane, Portland & Seattle R. Co., 1920, 109 Wash. 476, 186 P. 875; Galbraith v. Wheeler-Osgood Co., supra; and see R.C.W. 76.04.380.

■■ All damages of a kind reasonably foreseeable as a consequence of the failure to exercise reasonable care for the restraint and suppression of a fire may be recovered against the negligent party. To constitute an intervening independent cause as a break in the chain of proximate causation precluding recovery against a negligent defendant, Acts of God or negligence of others must be the sole proximate cause of the damage complained of. The burden of going forward with evidence sufficient to sustain a finding of intervening independent proximate cause rests on the party asserting it. If negligence of a defendant in starting or in failing to confine or suppress a fire combines and concurs with the negligence of others or with Acts of God to proximately cause damage to third parties, such defendant is liable for the whole of the damage so caused. Stephens v. Mutual Lumber Co., 1918, 103 Wash. 1, 173 P. 1031; Lehman v. Maryott & Spencer Logging Co., supra; Galbraith v. Wheeler-Osgood Co., supra; Burnett v. Newcomb, supra; Walters v. Mason County Logging Co., 1926, 139 Wash. 265, 246 P. 749; Mensik v. Cascade Timber Co., supra; Seibly v. City of Sunnyside, supra; Tope v. King County, 1937, 189 Wash. 463, 65 P.2d 1283; Teter v. Olympia Lodge, 1938, 195 Wash. 185, 80 P.2d 547; Blessing v. Camas Prairie Railroad Co., 1940, 3 Wash.2d 266, 267, 100 P.2d 416; Berglund v. Spokane County, 1940, 4 Wash.2d 309, 103 P.2d 355; Sitarek v. Montgomery, 1949, 32 Wash.2d 794, 203 P.2d 1062; Theurer v. Condon, 1949, 34 Wash.2d 448, 209 P.2d 311; McLeod v. Grant County School District, 1953, 42 Wash.2d 316, 255 P.2d 360.

■ One who by contract assumes a preexisting duty of another to provide fire protection and furnish firefighting service is liable to third parties relying on prudent performance of such duties for damage proximately caused by failure to exercise reasonable care in the performance of the assumed duties. In such situation a disclaimer of liability between nongovernmental contracting parties will not bar recovery by the third party for damage resulting from negligent performance of the assumed duties. Sheridan v. Aetna Casualty & Surety Co., 1940, 3 Wash.2d 423, 100 P.2d 1024; Western Auto Supply Agency of Los Angeles v. Phelan, 9 Cir., 1939, 104 F.2d 85.

■ In weighing the evidence pertaining to the charges of negligence against all defendants, well settled rules of law recognized in Washington have been kept in mind. Applicability of *res ipsa loquitur* is neither urged by plaintiffs nor authorized by any Washington decision. The burden of proof rests on

plaintiffs to establish by a fair preponderance of the evidence both negligence as charged and proximate causal relationship of such negligence to claimed damage. Substantial evidence and not a mere scintilla is required. Carley v. Allen, 1948, 31 Wash.2d 730, 198 P.2d 827; Wilson v. Northern Pacific Railway Co., 1954, 44 Wash.2d 122, 265 P.2d 815; Evans v. Yakima Valley Transportation Co., 1952, 39 Wash.2d 841, 239 P.2d 336.

Under the foregoing general principles and other rules of Washington law to be particularly mentioned, the contentions of the parties as to liability of defendants in the consolidated cases will now be considered separately as to each defendant on the basis of the facts found and stated in detail in the Findings of Fact.

## PAW Liability

Four general categories of negligence are charged against PAW: (1) failing to keep its right of way in reasonably safe condition with respect of fire hazard; (2) failing to maintain a speeder patrol on August 6, 1951; (3) operating its train under the fire-hazard weather and right of way conditions existing on August 6, 1951; and (4) relying on the Forest Service's fighting of the fire and in failing to provide the added action in the firefighting allegedly required by reasonable care.

*Right of way conditions.* A strong inference arises from the evidence that the active agent (a term used in several of the cited Washington opinions) starting the initial fire on the PAW right of way in the Heckleville area shortly after noon on August 6, 1951 was the PAW train passing through the area less than an hour prior to discovery of the fire. Direct evidence of such fact is not required. Abrams v. Seattle & Montana R. Co., 1902, 27 Wash. 507, 68 P. 78. The occurrence of some seven or eight small spot fires all found approximately in the same position between the rails of the track shortly following the passing of the train compel the inference referred to, especially since no other likely source

of the fire is suggested in the evidence. These circumstances coupled with the fact of the broken equalizer bar on the engine make it highly probable that the contact of the broken bar with a wheel or other part of the engine, or with the rail, caused fire, sparks, or particles of metal heated sufficiently to ignite a fire, to drop from the engine to the roadbed of the right of way.

Plaintiffs did not allege nor do they now contend for negligence on the part of anyone based on defect in the engine and its breakdown, or because fire or heat was communicated to the right of way by reason thereof. In its counterclaim against PAW the United States made allegations to this effect; however, no evidence was offered of previous right of way fires ignited by the engine, of inadequacy of inspection of the engine, of actual or constructive notice of engine defects, or of any other circumstance tending to show negligence of PAW under Washington law in the particulars referred to. Thus, while it has been found that the PAW engine was the active agent first depositing material sufficiently heated to ignite a fire upon the right of way, under the contentions of the parties and the evidence there is no basis for holding anyone negligent for such occurrence.

The only fire ignited by the engine which could possibly have caused the damage complained of by plaintiffs was the Heckleville fire. Therefore, the short section of the PAW right of way in the Heckleville area is the only portion thereof with which we are directly concerned as containing material wherein the Heckleville fire conceivably could have been started. When the first persons arrived at the Heckleville fire about 2:30 p. m. fire was burning in and along the right of way and adjacent land for a distance of about 300 feet and spotting south of the right of way. Neither at that time nor at any time later did any witness see any condition or describe any circumstance from which the place, manner and means of the initial fire can be determined. A great deal of evidence

was offered concerning the fire hazardous condition of the right of way in general, with particular details relating to areas other than the stretch wherein the initial Heckleville fire occurred. From this it might be inferred that the particular stretch of the initial fire was comparable in condition to the rest of the right of way, although there was evidence indicating that conditions between Camp Creek Bridge and Camp 1, which includes the Heckleville area, were less fire hazardous than elsewhere on the right of way. However, as observed in the Abrams decision, Washington courts have been extremely liberal in passing on the sufficiency of evidence to warrant a finding of negligence on the part of a railroad in this type of case. For this reason the court has found PAW negligent in allowing a fire hazardous condition to exist on its right of way generally and in the particular area where the Heckleville fire started.

The evidence of causal relationship between such negligently caused condition and the igniting and spread of the fire is more vague, uncertain and unsatisfactory than the proof of the conditions at the particular site of the original fire. It simply cannot be determined from the evidence with any degree of certainty or with reasonable probability and without inference on inference where, how or why the fire ignited, nor whether any excess of combustible material on the right of way was actually at the initial point of the fire. For all that appears in the evidence, considering the extremely dry ground conditions and low atmospheric humidity at the time, the hot droppings from the engine might well have started a fire in a sound tie of excellent condition or in little wisps of dried grass or similar material to be found on the rights of way of similar railroads in the area at the time of year in question no matter how well kept up with respect to fire precautions. In these circumstances, causal relationship between the negligence of PAW with respect of the condition of its right of way and the initial igniting and subsequent spread of the

Heckleville fire is not established by a preponderance of the evidence.

■ *Speeder patrol.* As far as here material the Washington statute R.C.W. 76.04.260 provides:

"*Locomotives, steam boilers— Speeder patrols.* It shall be unlawful for anyone to operate within one-eighth mile of any forest land during the period April 15th to October 15th inclusive, which period shall be designated as the closed season unless the designated season is extended by the supervisor [state supervisor of forestry] due to dangerous fire condition:

\* \* \* \* \* \*

"(2) Any common carrier railroad trains operating through forest lands unless:

"(a) Such trains are followed by a speeder patrol at such times and in such places as the supervisor may designate, \* \* \*."

Plaintiffs in the Arnhold case in contending for negligence by PAW as a matter of law for violation of the statute referred to recognize the necessity of the notice specified in the quoted portion of the statute and assert such notice was provided by the general season closure notice, Exhibit 27, and by oral notice given in the spring of 1951 at or shortly before commencement of the fire closure season. Exhibit 27 contains no reference whatever to speeder patrols and there is no preponderance of evidence establishing that in fact oral notice requiring speeder patrols was given. For want of proof of the notice required by the statute, violation thereof by PAW is not shown and plaintiffs' contention of negligence *per se* in that particular cannot be sustained.

■ Plaintiffs contend, *arguendo*, that if the speeder patrol statute was not violated, such patrol was required in the exercise of reasonable care under the existing circumstances. Despite the daily and frequent passage of logging trains in the Heckleville area west of Camp 1 there is no evidence of any train-caused

right of way fire having occurred in that area at any previous time. In the steep grade portions of the right of way east of Camp 1, where brakeshoe fires frequently occurred, speeder patrols were regularly provided. If the necessity of speeder patrols in the Heckleville area appeared clearly enough to make their absence a want of due care, the state supervisor of forestry and his subordinate, the state fire warden, both primarily responsible for enforcement of state law concerning speeder patrols, certainly should and undoubtedly would have given definite and unequivocal notice and demand for speeder patrol in the Heckleville area followed by reasonably frequent and careful checkup on compliance. From the fact that these actions were not taken and because of other circumstances shown in evidence, including the intended but fortuitously prevented immediate return of the engine over the Heckleville area right of way which would have provided as good or better fire patrol than a speeder, findings negativing lack of due care with respect of speeder patrol have been entered.

■ *Train operation under existing conditions.* The responsible state and federal forest protection authorities, at a minimum having the duty to warn and advise of forest fire hazards, did not consider it necessary to request discontinuance of train operations on August 6, 1951 or issue any specific warning with respect thereto. If these officials, having the particular duty and interest in closely watching fire hazard conditions and with the means and equipment for doing so, did not consider suspension of train operations or patrol by speeder required by the conditions, how much less would the officials of PAW, having common carrier responsibilities for continuing service, consider it so. The evidence does not justify a finding that PAW was negligent merely by operating its train under the weather and right of way conditions existing on August 6, 1951.

■ The final charge of negligence against PAW is that in the exercise of reasonable care PAW ought to have recognized the lack of due care in the fighting of the fire by the Forest Service and that PAW ought to have supplied the deficiency in firefighting. As indicated in the applicable principle of law earlier stated herein, with knowledge of a fire on its right of way, whether caused by its engine or not, PAW had the duty to exercise reasonable care to confine and suppress the fire. However, if it appeared to PAW in the exercise of reasonable care that experienced, competent firefighters were in charge of the fire and apparently taking every reasonable measure to confine and suppress the fire, the mere fact, long later determined, that the firefighting was inadequately or imprudently performed would not justify finding PAW negligent. During the course of the firefighting, both on the right of way and thereafter, a number of highly competent and experienced forest fire fighters were on the scene as participants or observers. There is no evidence that at any time during the long battle any of these experts or any representative of any plaintiff or anyone else interested in protecting life and property then in jeopardy either condemned, criticized or offered suggestions concerning means or method used in fighting the fire. Under all the circumstances there is a failure of proof of negligence on the part of PAW in the discussed particular.

### Fibreboard Liability

■ Liability is asserted against Fibreboard for its alleged negligence: (1) in relying on the firefighting action of the Forest Service and in failing to supplement such action in confining and suppressing the fire after it reached Fibreboard lands; and (2) in failing, prior to the Heckleville fire, to abate or procure clearance certificate for logging slash in an area of Fibreboard land to which fire from the 1,600-acre tract was communicated when the breakout occurred in the early morning of September 20 and from where the fire spread to plaintiffs' lands and property.

The evidence does not support a finding of negligence in any particular urged in

the first stated category. The court has found the Forest Service negligent in its firefighting action during the initial period, August 6–10, in which interval the fire reached Fibreboard lands. However, under the evidence it does not appear that a reasonably prudent landowner in the situation of Fibreboard under the same or similar circumstances would have recognized the inadequacies of the Forest Service action; or, if so, that such landowner exercising reasonable care would have felt authorized or obliged to intervene and to interfere in any particular with the Forest Service supervision and control of the firefighting.

Under the circumstances, indisputably shown by the evidence, a finding of negligence on the part of Fibreboard in not disposing of the slash on its lands in the vicinity of the 1,600-acre tract, or in the alternative, procuring state clearance certificate on such slash lands, is not justified and has not been made. However, plaintiffs in the Arnhold case contend that under Washington statutes[2] the owner of land containing logging slash, absent certificate of clearance thereof by the state supervisor of forestry, is absolutely liable, irrespective of negligence, for damage to other landowners caused by fire emanating from, even though not originating on, such slash land. This question of law has never been presented to the Washington Supreme Court in any form and plaintiffs' contention is not supported directly or indirectly by any reported decision of that court since 1929 when a state statute declaring unabated slash a nuisance was repealed.[3] This court can only make, and apply as the law, a reasoned prediction as to what will be said of plaintiffs' contention by the Washington court if and when it be confronted with the problem. The numerous questions presented in this litigation con-

cerning Washington law relating to liability for fire, particularly on or near forest lands, have required careful and extensive study of the cited statutes and many other related phases of Washington statute and decision law. In the light thereof the firm conclusions have been reached: that provision for absolute liability of the owner of land containing logging slash under the particular circumstances above specified was not intended by the state legislature in enacting the statutes relied on by plaintiffs Arnhold et al; and, that liability without negligence of such landowners under such conditions will not be found or held by the Washington Supreme Court under the cited statutes or otherwise.

### Forest Service Liability

The categories of negligence charged against the Forest Service are: (1) failing to require PAW to keep its right of way in reasonably safe condition with respect to fire hazard; (2) failing to require PAW to maintain speeder patrol on August 6, 1951; (3) permitting PAW to operate its train under the fire hazard, weather and right of way conditions existing on August 6, 1951; (4) failing in numerous particulars to exercise reasonable care in promptly, sufficiently and effectively confining and suppressing the Heckleville fire during the afternoon, evening and night of August 6 and during the morning and early afternoon of August 7, 1951; (5) failing in several particulars to exercise reasonable care to confine and suppress the fire during the mop-up period in the 1,600-acre tract from August 10 to September 19; and (6) failing to exercise reasonable care in various particulars on September 19 and 20 prior to the breakout of the fire from the 1,600-acre tract.

2. R.C.W. 76.04.230 relating to certificates of slash clearance; 76.04.370 relating to abatement of slash; 76.04.450 prohibiting the exposure of Olympic Peninsula forests to the hazard of fire.

3. Section 2582 Pierce's Code (Chapter 105, Laws of 1917, section 4 as amended by chapter 64, Laws of 1921, section 2) declaring slash covered forest land a "public nuisance" was replaced in 1929 by section 5807 of Remington's Compiled Statutes (chapter 134, Laws of 1929, section 1) declaring the same to be a "fire hazard."

For discussion these charges of negligence will be grouped according to the time of their alleged occurrence, i. e., the prefire period (categories 1, 2 and 3); the initial fire period August 6–10, 1951 (category 4); the mop-up period August 10–September 19, 1951 (category 5); and the final breakout September 19–20, 1951 (category 6).

*Prefire period.*

*Right of way conditions.* Liability of the United States for negligence because of the lack of proper maintenance of the PAW right of way with respect to fire conditions depends on the duty, if any, of the Forest Service to require or provide abatement of fire hazards on the right of way. Plaintiffs contend such duty arose: first, by reason of the government's ownership of the right of way land under the circumstances previously related herein; and, second, by reason of the duties and obligations of the Forest Service under the cooperative agreement.

There is no specific and clearcut statement supporting the first contention in any of the Washington statutes or decisions cited on the point.[4]

A study of all of the authorities compels the conclusion that in the heavily forested state of Washington where there is great hazard of vast injury and damage from forest fire, the state law places upon an owner of land either containing timber or in the immediate vicinity of timber lands, the duty to exercise reasonable care concerning maintenance of his premises as to fire precautions, even though exclusive possession and use of the land be vested in another by license, lease, easement or other contract. Contract provisions placing responsibility for such maintenance on the purchaser, occupant or user of premises are lawful and enforceable between the contracting parties but in themselves will not absolve the landowner from liability to third parties for damage caused by negligent failure of fire hazard abatement on the owner's land. Griffiths v. Henry Broderick, Inc., 1947, 27 Wash. 2d 901, at page 909, 182 P.2d 18, at page 22, 175 A.L.R. 1. What action concerning fire protection, if any, may be required in the exercise of reasonable care by an owner of land, which by contract is in the use and possession of another, depends on the particular circumstances of each case. In this instance the United States, through the Forest Service, by direct and frequent observation of its experts particularly trained and experienced in the matter, had actual knowledge of the sub-standard conditions respecting fire hazard on the PAW right of way and of the fact that no remedial action was being taken or contemplated by PAW in violation of its express commitments to the United States. In these circumstances reasonable care required corrective action by the United States effective well prior to August 6, 1951.

Under the cooperative agreement the Forest Service assumed responsibility for providing fire protection of the tim-

4. Pro: R.C.W. 76.04.350, 76.04.370, 76.-04.380; Prince v. Chehalis Savings & Loan Ass'n, 1936, 186 Wash. 372, 373, 58 P.2d 290, 61 P.2d 1374; Swan v. O'Leary, 1950, 37 Wash.2d 533, 225 P. 2d 199; State v. Canyon Lumber Corp., 1955, 46 Wash.2d 701, 284 P.2d 316; Northern Pacific Railway Co. v. Mentzer, 9 Cir., 1914, 214 F. 10; Thomas v. Hamer Lumber Co., 153 N.C. 351, 69 S.E. 275, 32 L.R.A.,N.S., 584; Conradt v. Clauve, 93 Ind. 476, 47 Am.Rep. 388; Little v. Lynn & Marblehead Real Estate Co., 301 Mass. 156, 16 N.E.2d 688; De Clara v. Barber Steamship Lines, 309 N.Y. 620, 132 N.E.2d 871; Reed v. Allegheny County, 330 Pa. 300, 199 A. 187;

Schetter v. Housing Authority of City of Erie, D.C.W.D.Pa.1955, 132 F.Supp. 149; Pierce v. United States, D.C.E.D.Tenn. 1955, 142 F.Supp. 721.

Con: O.A.G. 1917–1918, p. 70; Great Northern Ry. Co. v. Oakley, 1925, 135 Wash. 279, 237 P. 990; First State Bank of Thompson Falls v. United States, 9 Cir., 92 F.2d 132; Baltimore & O. R. Co. v. Walker, 1888, 45 Ohio St. 577, 16 N.E. 475; Merrill Ry. & Lighting Co. v. City of Merrill, 1903, 119 Wis. 249, 96 N.W. 686; Fraser v. Hawkins, 1919, 137 Ark. 214, 208 S.W. 296; United States v. Ninety-nine Diamonds, 8 Cir., 139 F. 961; Reed v. Allegheny County, supra.

berlands within a protected area which included the Heckleville portion of the PAW right of way. If this responsibility had been assumed in an identical agreement by a private owner of land in the protection area, under Washington law such owner would have had the duty, as to persons reasonably relying thereon, to exercise reasonable care in providing adequate maintenance relating to fire precautions on and along the right of way. The United States was the owner of considerable lands within the same protection area and assumed the fire protection duty, at least partially, as a landowner rather than merely as a public fire protection agency. Therefore, it is not necessary to determine the duties and liability, if any, of the United States in rendering forest fire protection in an area where the government owns no land and where it acts solely in the capacity of a public fireman.

The United States, both as landowner in the particular circumstances and by reason of the cooperative agreement, owed the duty to require or provide, through the Forest Service, proper maintenance as to fire precautions on the PAW right of way in the Heckleville area. The absence thereof, referred to in discussing the liability of PAW, constituted negligence chargeable to the United States. As previously stated herein, there was a failure of proof of causal connection between the negligence found and either ignition or spread of the Heckleville fire.

*Speeder patrol and train operation on August 6, 1951.* For the reasons mentioned in considering the same specifications of negligence charged against PAW, a finding of negligence on the part of the Forest Service in these particulars would not be sustained by a preponderance of the evidence.

*Initial fire period.*

The particulars of the alleged negligence of the Forest Service in this period are numerous, varied and detailed but all are based on the general contention that ranger Floe and his subordinates acted too slowly and with insufficient men and equipment in making the first attack on the Heckleville fire from the time it was first discovered and reported early in the afternoon of August 6, 1951 until it was brought under control within the 1,600-acre area on August 10, 1951.

It is difficult for any person, whether an expert forester experienced in firefighting or not, in appraising such a situation long after the event, to avoid hindsight judgment and opinions predicated on what actually happened as we now know it. Every person responsible for decision and action in such a situation is entitled to have his conduct judged in the light of the situation as it might have appeared at the time to one exercising reasonable care, with full allowance for all of the difficulties and limitations under which the actor was required to make decisions and take action. Under Washington law one required to act in an emergency not caused or contributed to by his own lack of reasonable care will be absolved of a charge of negligence if he acted as a reasonably prudent person might have acted in the same circumstances even though it later appears that the actions taken were not the safest and best available or those which other reasonably prudent persons might have taken in the same situation.[5] Washington recognizes degrees of care, i. e., the highest degree of care, ordinary care and slight care the want of which is gross negligence.[6] Floe and his subordi-

5. Hartley v. Lasater, 1917, 96 Wash. 407, at page 414, 165 P. 106, at page 109; Dupea v. City of Seattle, 1944, 20 Wash. 2d 285, 147 P.2d 272; Poling v. Charbonneau Packing Corp., 1945, 45 Wash. 2d 845, 278 P.2d 375; Sandberg v. Spoelstra, 1955, 46 Wash.2d 776, 285 P.2d 564.

6. Pitschman v. Oman, 1934, 177 Wash. 55, 30 P.2d 945; LaMoreaux v. Fosket, 1954, 45 Wash.2d 249, 273 P.2d 795; Peterson v. City of Seattle, 1957, 51 Wash.2d 187, 316 P.2d 904.

nates were only required to exercise ordinary care and their failure to conform to a higher standard would not constitute negligence.

On the other hand, fire in or near heavily forested lands during a hot and dry fire season, such as occurred in the Soleduc District from early spring until late fall 1951, is universally recognized by foresters in Washington, and generally elsewhere, as extremely dangerous and as having a tremendous potential for damage to life and property. It is also well recognied: that small fires in the forest shortly following inception may be readily controlled and suppressed by prompt and thorough action; that such fires easily and rapidly spread and rarely remain small or die out unattended without active control and extinguishment; and that forest fires by the minute are more difficult and dangerous to confine and control as they spread under conditions of wind, heat and low humidity. For these reasons ordinary and reasonable care requires urgent speed, vigorous attack and great thoroughness in reaching and putting out fire in the forest. In the early stages of firefighting action a few minutes' delay, a man or two less than needed, and too little of the right kind of equipment may, any one of them, make the difference between a small fire quickly disposed of with little or no damage and a conflagration of extensive proportions resulting in great loss of life and property.

All of the factors referred to must be taken into account in weighing the evidence and reaching findings as to whether a preponderance of the evidence shows that the Forest Service personnel were negligent during the initial period in any one or more of the particulars charged. So considered, it has been concluded that a finding of negligence chargeable to the United States in the initial period is required. After fair allowance for all of the difficulties and uncertainties confronting Floe and his subordinates and the limitations under which they were required to perform their duties, the inference clearly arises from the evidence that the Heckleville spot fire was not attacked as promptly, vigorously and continuously as ordinary care required. Whether, or at what time and place, the fire might have been contained or suppressed within said area but for such negligence is a matter of speculation and cannot be determined as a reasonable probability under the evidence. Findings to such effect have been entered.

*The mop-up period.*

On August 10 hand and caterpillar built fire lines completely circled the 1,600-acre area and to the extent that the fire was confined within that area it was under control. In the following several weeks until September 19 from time to time smokes from smoldering embers and flareups of fire were discovered and extinguished between intervals of several days when neither fire nor smoke could be found in the area. On September 13 a flareup of some size occurred and fire escaped the "cat" line in the vicinity of L–1. This was brought under control and a new line established around it within a few hours.

In a fire-swept forest area of such proportions and topography it is a practical impossibility to find and put out every last vestige of fire smoldering in buried roots, logs, turf and debris. In such a situation it is common and accepted practice on the Olympic Peninsula and in other Northwest forest regions to keep the area within fire lines under surveillance by daytime patrol and to suppress smokes and flareups as they occur, awaiting the heavy rains of late September and October for complete quenching of every last spark. This is not quickly or readily accomplished even with the heavy and frequent rainfall of fall and winter in this near-coastal region.

Plaintiffs' charges of negligence against the Forest Service during the mop-up period primarily involve the extent and frequency of patrol, and the number of men and amount of equipment employed in the mop-up. After considering each of the particulars of negligence charged and the evidence re-

lating thereto, it has been found that there is no preponderance of evidence establishing negligence by the Forest Service during the mop-up period from August 10 to September 19.

*The final breakout.*

 The particulars of negligence charged against the Forest Service in this period may be summarized as charging: the failure to maintain a night patrol during the night of September 19–20; the failure to take, study and comprehend the significance of weather data and predictions on and prior to September 19 as related to the heat, humidity and wind conditions to be expected during the night of September 19–20; and the failure to anticipate and take precautions concerning the high temperature, low humidity and gale-force wind which arose late in the night of September 19 or early in the morning of September 20. With great rapidity the exceptionally dangerous conditions referred to caused a tremendous flareup of fire during the night which when first discovered in the early morning had escaped the 1,600-acre area and was raging beyond any possible human control under the wind and weather conditions then existing.

In considering these charges of negligence only questions of fact, resolved by weighing direct evidence and by drawing inferences therefrom, are presented and no substantial question of law is involved other than as generally stated earlier herein. On such analysis, there is no preponderance of evidence showing the Forest Service personnel negligent in any of the particulars charged. Substantial and credible evidence was presented to the effect that patrol of the 1,600-acre area during the night of September 19–20 was not required by customary practice or in the exercise of reasonable care under the existing conditions. The most that may be said for the other contentions is that, by hindsight and critical study of selected portions of data now available, weather conditions to some degree unfavorable in respect of fire control might have been

expected in the vicinity of the 1,600-acre area some time during the calendar day of September 20. If accepted at full face value, this showing falls short of the kind and amount of evidence justifying a finding of negligence. Moreover, if negligence be assumed in any particular charged, causal relationship between such negligence and the breakout and spread of the fire on the early morning of September 20 is a matter of speculation and conjecture and not shown as a reasonable probability. What, if anything, might have been done to confine the fire within the 1,600-acre area under the extraordinary conditions of heat, wind and low humidity during the night of September 19–20, even with early anticipation of such conditions and a night patrol, is highly problematical. The evidence does not preponderate to show a causal relationship between the negligence charged and the event and damage complained of. Prior to the spread of the fire from the 1,600-acre tract in the morning of September 20 no damage to any plaintiff in the cases at bar had occurred. All of the damage for which recovery is sought in these actions was sustained after the breakout of the fire and as a result thereof.

It is not necessary to discuss or decide whether the strong wind, the high temperature, the low humidity, or the concurrence of the three during the night in question, was an Act of God as that term is meant in law. If Forest Service personnel were guilty of negligence proximately contributing to the breakout of the fire on the morning of September 20, the defendant United States would be liable for all damage resulting therefrom even though an Act of God concurred and combined with defendant's negligence in effecting the breakout and in producing the damage. On the other hand, if Forest Service personnel were not guilty of negligence proximately contributing to the breakout of the fire, then the adverse weather conditions, whether an Act of God or not, were the sole proximate cause of the escape of the fire and the damage resulting therefrom.

## Summary re Liability of Defendants

The PAW engine was the active agent igniting fire on the railroad's right of way. Such action of the engine was not caused by negligence of any defendant. Places in the Heckleville area of the right of way contained some excess of combustible material due to negligence chargeable to PAW and the United States. Causal connection thereof with ignition of the Heckleville fire is not shown by a preponderance of the evidence. Having knowledge of the existence of fire on the right of way, PAW and the United States had the duty to control, confine and suppress the same as far as possible by the exercise of reasonable care. United States employees were negligent in failing to expeditiously and fully perform such duty during the initial period of the fire. It is not shown by the evidence that but for such negligence the Heckleville fire would have been wholly extinguished prior to extending to the 1,600-acre tract. No damage to any plaintiff in these cases was caused by said negligence. Spread of the fire beyond the 1,600-acre area was stopped by the Forest Service from August 10 to September 19. During this period all measures and action required in the exercise of reasonable care by defendants were taken to control, confine and suppress the fire. For as long as several days at a time during the mop-up period the fire was in a dormant, hidden state and undiscoverable by the exercise of reasonable care. Due to exceptionally fire hazardous weather conditions occurring during the night of September 19–20, without negligence of any defendant causing or contributing thereto, fire in an unknown form, manner and place escaped from the 1,600-acre area. This resulted in the damage to plaintiffs for which recovery is sought in these actions.

From the facts thus summarized and the principles of law earlier stated herein, these ultimate findings and conclusions follow: The Heckleville fire was not negligently started by any defendant; negligence chargeable to the United States proximately contributed to spread of the fire to the 1,600-acre area, without resulting damage to plaintiffs; communication of fire from such area to plaintiffs' property was not proximately due to negligence of any defendant; such occurrence happened fortuitously and despite the exercise of reasonable care by defendants. Accordingly, liability for plaintiffs' damage in whole or in part has not been established as to any defendant.

## United States Claims

By counter claim against Rayonier the government sought recovery of a portion of its firefighting expenses allegedly incurred by spread of the fire after it reached Rayonier lands containing unabated slash as to which state certificate of clearance had not been issued. It was contended that under Washington law [7] a landowner's liability is absolute despite his freedom from negligence for expenses incurred by others in fighting fire on the owner's slash lands having no state certificate of clearance. Dismissal of this claim as provided by the stipulation fixing the amount of Rayonier's damage renders determination of the contention unnecessary.

By cross claim the United States seeks recovery of damages from PAW for loss of government timber, firefighting costs, and contribution toward satisfaction of any judgments entered herein against the United States, the several stipulated amounts whereof total $300,000. The government contends PAW is liable for each of the claimed items because of its negligence in maintaining fire hazards on its right of way, defects in the engine, and failure and refusal to fight the fire. On August 6 request of the Forest Service that PAW take over fighting of the fire which originated on lands within the possession, use and control of PAW, was declined. The failure of the Forest Service to attack the fire in the initial period as promptly and thoroughly as reasonable care required precludes government re-

---

7. R.C.W. 76.04.230, 76.04.370 and State v. Canyon Lumber Corp., supra.

covery for fire fighting expenses and for loss of government timber within the 1,600-acre area. There was no causal relationship between any negligence of PAW and the loss of government timber outside the 1,600-acre area.

The pertinent law applied to the facts found requires dismissal of both actions and all claims presented therein. Entry of judgments to such effect is directed.